The orders of June 22 and of June 26, 1967, here under review, are affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

[L. A. No. 29441. In Bank. Apr. 15, 1968.]

GAIL ELKIND, Plaintiff and Appellant, v. SYLVAN BYCK, JR., Defendant and Respondent.

Thomas C. Lynch, Attorney General, Edward M. Belasco and William L. Zessar, Deputy Attorneys General, for Plaintiff and Appellant.

Schuman, Novak & Cooper and Mark S. Novak for Defendant and Respondent.

TRAYNOR, C. J.—Plaintiff appeals from an order denying her application for child support filed under the Uniform Reciprocal Enforcement of Support Act (hereafter URESA; Code Civ. Proc., § 1670 et seq.).

Plaintiff and defendant were married in New York on May 4, 1956, and divorced in Georgia on July 31, 1957. Their daughter, Kim Ivy, was born on April 19, 1957. "In lieu of permanent alimony," the judgment of divorce "incorporated in its entirety" the agreement made between the parties on July 3, 1957, "with reference to the support and maintenance" of the plaintiff and her minor child.

The agreement recited the parties' wish to have a "complete and final settlement" of their rights and obligations. Plaintiff received custody of the child. Defendant agreed to deposit with a designated Georgia bank, as trustee, the sum of

$11,500 to form the corpus of a trust for the support of the child until she reached the age of 18 years, "in lieu of any claim which said child or the legal representative of said child now has or may hereafter be entitled to from her father or his estate for past, present and future support and maintenance, alimony or a year's support." The profits of the trust were to be applied by the trustee for the payment of $60 per month for the support of the child, and the corpus could be invaded under certain circumstances. In addition, defendant agreed to establish a trust of $2,500 for the sole purpose of providing a college education for the child. The parties agreed that "No changes in the financial condition or circumstances of the parties or of said minor shall authorize either of said parties and/or court to change or modify the terms or provisions of said agreement or any judgment or decree that might be rendered in any regard to any of the matters set out in said agreement; the parties to this agreement having taken into consideration said changes of conditions or circumstances and also the possibility that an act or statute might be passed in the future authorizing the modification of any judgment or decree with reference to alimony. Said parties waive and renounce any rights which might accrue to them by virtue of any change or condition, or by virtue of any statute or law being passed that might grant to them rights that are not set out at the present time."

In 1965 plaintiff, residing in New York with the child, initiated proceedings pursuant to the URESA provisions of that state for an order directing defendant to provide "fair and reasonable" support of the dependent child. She did not allege any failure by defendant to comply with the divorce decree, but testified that she now required $750 per month for the support of the child. The New York court ordered the petition transmitted to the Superior Court of Los Angeles, where defendant resides, for proceedings under California's URESA provisions. That court denied the application for support "by reason of the lump sum settlement under the Georgia statute."

A 1955 Georgia statute provides that a judgment for alimony may not be revised if it awards payment from the corpus of the husband's estate in lieu of weekly, monthly, annual or other periodic payments to the wife or child. (Ga. Code Ann. § 30-222; *Daniel* v. *Daniel* (1961) 216 Ga. 567 [118 S.E.2d 369].)

At the time the divorce decree incorporating the lump-sum settlement was rendered, however, the parties' duties were subject also to Georgia's URESA provisions enacted in 1956, superseded by substantially similar provisions in 1958. Under the 1956 statute, a duty to support dependent children is imposed upon a father "notwithstanding the fact" that he "has obtained in any State or county a final decree of divorce or separation from his wife," and he "shall be deemed legally liable for the support under this Act of any dependent child of such marriage, whether or not there has been an award of alimony or support for said child. . . ." (Ga. Laws 1956, URESA § 2(6)(a); see Ga. Code Ann. § 99-903(a)(6)(a).)

The act further provides that "Duties of support applicable under this Act are those imposed or imposable under the laws of the State where the obligor was present during the period for which support is sought." (Ga. Laws 1956, URESA § 6; see Ga. Code Ann. § 99-907(a.) Thus, if defendant were present in Georgia during the period for which support is sought, a Georgia court would deny plaintiff's petition on the ground that under Georgia law a lump-sum settlement is conclusive upon the parties.[1] Clearly, however, the Georgia decree does not purport to deprive the courts of the obligor's residence of the power to impose a duty of support in accordance with their law. (See Ehrenzweig, *Interstate Recognition of Support Duties* (1954) 42 Cal.L.Rev. 382, 394.)[2]

---

[1] But see *Barfield* v. *Harrison* (1960) 101 Ga.App. 497 [114 S.E.2d 302], requiring a father residing in Georgia to provide support under URESA notwithstanding a divorce decree providing for no support, on the ground that URESA affords an independent remedy. (There is no indication whether the decree was nonmodifiable as a lump-sum settlement under Ga. Code Ann. § 30-222. The result may be explained n the ground that Georgia law permits a wife to obtain support for the child when the divorce decree fails to provide for any support. *Thomas* v. *Thomas* (1959) 215 Ga. 383 [110 S.E.2d 657].)

[2] It is of no consequence that under URESA Georgia may continue to measure defendant's obligations within its borders under the decree, notwithstanding a subsequent order of support. ("Any order of support" under URESA "shall not supersede any previous order of support issued in a divorce or separate maintenance action, but the amounts for a particular period pursuant to either order shall be credited against amounts accruing or accrued for the same period under both." Ga. Laws 1956, URESA § 26; Ga. Code Ann. § 99-927(a).) Under this provision it is possible that Georgia need not enforce a subsequent URESA order of another state (see *Howard* v. *Howard* (1966) (Miss.) 191 So.2d 528; *Despain* v. *Despain* (1956) 78 Idaho 185 [300 P.2d 500]), nor entertain an application for support based upon the law of the father's residence elsewhere, but no restraint would thereby be imposed upon the courts of that residence.

 Whether defendant is subject to a duty of support imposed apart from, and notwithstanding the lump-sum settlement must therefore be determined in accordance with the law of California, his residence during the period for which such support is sought. Civil Code section 139 provides that ''The provisions of any agreement for child support shall be deemed to be separate and severable from all other provisions of such agreement relating to property and support of the wife or husband. . . . All . . . orders for child support, even when there has been an agreement between the parties on the subject of child support, may be modified or revoked at any time at the discretion of the court except as to any amount that may have accrued prior to the order of modification. . . .'' Although this provision was added in 1967 and applies prospectively only, it codifies the law existing in 1957—when the parties' agreement was made—insofar as it permits the upward modification of child support orders. In 1957 Civil Code section 139 provided: ''That portion of the decree or judgment making any such allowance or allowances [for the support or maintenance of a spouse or child] may be modified or revoked at any time at the discretion of the court. . . .'' Cases construing the effect of the statute upon integrated property agreements designed, as was the parties' agreement herein, to settle all rights and duties as to support as well, make it clear that ''No such contract may, insofar as the children are concerned, abridge the power of the court . . . to provide for the support of the children.'' (*Puckett* v. *Puckett* (1943) 21 Cal.2d 833, 839 [136 P.2d 1]; see also *Newhall* v. *Newhall* (1958) 157 Cal.App.2d 786 [321 P.2d 818].)

Moreover, Civil Code section 138, providing that in divorce or separate maintenance actions the court may ''make such order for the custody of such minor children as may seem necessary or proper and may at any time modify or vacate the same,'' has been construed to govern orders for child support as well. (*Sharpe* v. *Wesley* (1947) 78 Cal.App.2d 441 [177 P.2d 802]; *Allen* v. *Allen* (1956) 138 Cal.App.2d 706 [292 P.2d 581]; see also *Worthley* v. *Worthley* (1955) 44 Cal.2d 465, 470 [283 P.2d 19]; *Starr* v. *Starr* (1953) 121 Cal.App.2d 633 [263 P.2d 675]; *Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763 [197 P.2d 739].) Thus, it has long been the law of this state that parents cannot abridge the right of their minor child to proper support by any agreement. (*Merritt* v. *Merritt* (1930) 106 Cal.App. 234 [289 P. 240]; *Rosher* v. *Superior*

*Court* (1937) 9 Cal.2d 556 [71 P.2d 918].)[3] That right has been enforced under uniform reciprocal support legislation notwithstanding the parents' divorce and any support provisions in the decree. (*Whittlesey* v. *Bellah* (1955) 130 Cal.App. 2d 182, 185 [278 P.2d 511]; *Smith* v. *Smith* (1955) 131 Cal. App.2d 764, 769 [281 P.2d 274]; *Smith* v. *Smith* (1954) 125 Cal.App.2d 154, 164 [270 P.2d 613].)

 Defendant contends, however, that under *Yarborough* v. *Yarborough* (1933) 290 U.S. 202 [78 L.Ed. 269, 54 S.Ct. 181, 90 A.L.R. 924], California cannot impose, consistent with the full faith and credit clause of the United States Constitution (art. IV, § 1; 28 U.S.C. § 1738), any support obligation in excess of defendant's duty under the Georgia decree incorporationg the parties' agreement. In *Yarborough,* a Georgia decree incorporating a lump-sum settlement for child support was final and nonmodifiable in that state. The child subsequently resided in South Carolina, where personal jurisdiction was acquired over the father, a Georgia resident, for the purpose of requiring him to support the child in accordance with South Carolina law. Over a vigorous dissent by Justice Stone, the Supreme Court concluded that ''the mere fact of [the child's] residence in South Carolina does not give that state the power to impose such a duty upon the father who is not a resident and who long has been domiciled in Georgia. He has fulfilled the duty which he owes her by the law of his domicile and the judgment of its court. Upon that judgment he is entitled to rely.'' (*Yarborough* v. *Yarborough, supra,* 290 U.S. at p. 212 [78 L.Ed. at p. 276].)

The *Yarborough* case is inapposite here. That decision was based upon the father's continued domicile and residence in Georgia. The court expressly reserved the question ''whether South Carolina would have power to require the father, if he were domiciled there, to make further provision for the support, maintenance, or education of his daughter.'' (*Yarborough* v. *Yarborough, supra,* 290 U.S. at p. 213 [78 L.Ed. at p. 276].) The South Carolina court obtained jurisdiction by attachment of Yarborough's property, and only later was he served personally within that state. By contrast, defendant appears to have made California his home and place of business. Although the record does not indicate whether he has become a domiciliary of this state, clearly his substantial rela-

---

[3]Georgia's contrary local law is apparently unique. (See Ehrenzweig, Conflict of Laws (1962) p. 280.)

tionship with it justifies the application of its law of support.

Moreover, at the time of the *Yarborough* decision Georgia had not adopted the URESA provisions. The decree defendant invokes, however, was subject to that statute, which expressly reserves to the state of the obligor's residence the power to apply its law of support notwithstanding the decree. The decree therefore does not purport to govern defendant's obligations when he does not reside in Georgia. Thus, to hold that the decree bars the imposition of support duties in the circumstances of this case would give it greater credit than it claims for itself. The Constitution requires no such result. (Compare *Magnolia Petroleum Co.* v. *Hunt* (1943) 320 U.S. 430 [88 L.Ed. 149, 64 S.Ct. 208, 150 A.L.R. 413], with *Industrial Com.* v. *McCartin* (1947) 330 U.S. 622 [91 L.Ed. 1140, 67 S.Ct. 886, 169 A.L.R. 1179].)

The purpose of the full faith and credit clause is to "establish throughout the federal system the salutary principle of the common law that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered, . . ." (*Magnolia Petroleum Co.* v. *Hunt, supra,* 320 U.S. at p. 439 [88 L.Ed. at p. 155].) Thus the Constitution requires that judgments for alimony to a divorced wife that cannot be modified under the law of the rendering state, cannot be modified elsewhere. (*Sistare* v. *Sistare* (1910) 218 U.S. 1 [54 L.Ed. 905, 30 S.Ct. 682, 28 L.R.A. N.S. 1068]; *Barber* v. *Barber* (1944) 323 U.S. 77 [89 L.Ed. 82, 65 S.Ct. 137, 157 A.L.R. 163].) A divorce decree incorporating child support provisions, however, does not terminate the relationship of parent and child as it terminates the relationship of husband and wife. This case demonstrates why the divorce state should not be permitted to determine the welfare of the child for all time and in all states: More than ten years following the divorce, none of the parties appears to have any connection at all with Georgia; the mother and child reside in New York, and the father resides in California.[4]

Indeed, by the adoption of the reciprocal support legislation in almost all states (see 9C Unif. Laws Ann. 1 (1957)), the federal system now espouses the principle that no state may freeze the obligations flowing from the continuing rela-

[4]The *Yarborough* decision has been widely criticized. See, e.g., Reese and Johnson, *The Scope of Full Faith and Credit to Judgments* (1949) 49 Colum.L.Rev. 152, 175; Ehrenzweig, *op. cit. supra,* Conflict of Laws pp. 205, 279-280; Stumberg, Conflict of Laws (2d ed. 1951) p. 345; Note (1934) 47 Harv.L.Rev. 712.

tionship of parent and child. (See *Howze* v. *Howze* (D.C. 1967) 225 A.2d 477; *Allain* v. *Allain* (1960) 24 Ill.App.2d 400 [164 N.E.2d 611]; *Howard* v. *Howard* (1966) (Miss.) 191 So.2d 528; *Moore* v. *Moore* (1961) 252 Iowa 454 [107 N.W.2d 97].) The states now share the power over that relationship to the extent of the obligor's presence in each—a modified version of the exception suggested by *Yarborough* in favor of the power of the obligor's domicile.[5] (See also concurring opinion of Justice Rutledge in *Halvey* v. *Halvey* (1947) 330 U.S. 610, 619 [91 L.Ed. 1133, 1138, 67 S.Ct. 903]; dissenting opinion of Justice Frankfurter in *Kovacs* v. *Brewer* (1958) 356 U.S. 604, 613 [2 L.Ed.2d 1008, 1015, 78 S.Ct. 963]; Reese and Johnson, *The Scope of Full Faith and Credit to Judgments, supra,* 49 Colum. L.Rev. 152, 178.) In deference to the clearly articulated national policy of preserving the flexibility of support obligations, Georgia has expressly refrained from demanding that its judgment be conclusive elsewhere. The parties were therefore entitled to rely upon that judgment in Georgia alone.

Plaintiff should be allowed to prove that defendant has failed to provide fair and reasonable support for his child.[6] The judgment is reversed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

[5] The "provider's domicile" rule has been criticized as permitting deserters to flock to no-duty havens. See Ehrenzweig, *Interstate Recognition of Support Duties* (1954) 42 Cal.L.Rev. 382, 386. California's URESA version avoids that possibility by providing that "Duties of support . . . are those imposed or imposable under the laws of any state where the alleged obligor was present during the period for which support is sought or where the obligee was present when the failure to support commenced, at the election of the obligee." (Code Civ. Proc., § 1670.)

[6] Defendant contends that plaintiff may not appeal from the order denying relief by reason of article 3-A, section 38 of the New York Uniform Support of Dependents Law, which provides that "Any respondent in a proceeding brought under the provisions of this article shall have the same right of appeal as in civil proceedings or actions brought in the same court. Any order for support made by the court shall not be affected by an appeal but shall continue in effect until the appeal is decided. . . ." We need not consider defendant's contention under this provision, for plaintiff's right to appeal is governed by California law. California's URESA contains no such provision. The order denying relief is appealable as a "final judgment entered in . . . [a] special proceeding" in the superior court, (Code Civ. Proc., § 963, subd. 1.)