[Civ. No. 28612. First Dist., Div. Two. Mar. 21, 1972.]

ROBERTA S. PETERSEN, Plaintiff and Appellant, v.
RALPH E. PETERSEN, Defendant and Respondent.

COUNSEL

Seymour J. Abrahams for Plaintiff and Appellant.

Willys I. Peck for Defendant and Respondent.

OPINION

**TAYLOR, P. J.**—On this appeal by the wife from a portion of the judgment establishing an Illinois divorce decree as a California judgment, reducing future child support payments, and permitting the sale of certain securities to satisfy arrearage in past child support payments, the contentions are: 1) the applicable standard of "changed circumstances" is that of Illinois; 2) there was insufficient evidence of changed circumstances to support the reduction of child support; and 3) the court abused its discretion in directing the sale of certain stock to pay the husband's $2,400 arrearage in child support.

The record reveals the following facts: The parties were married in 1947, separated in 1964, and divorced on June 13, 1968, in Illinois, where they then resided. At the time of the divorce, the three children of the parties were 19, 16 and 4 years old. The written property settlement agreement of the parties dated June 4 and merged into the divorce decree, provided, so far as here pertinent: 1) the wife had custody of the children; 2) the husband was to pay $150 a month for the support of each of the three children, commencing July 1, 1968, until each attained 21 years of age or completed college, whichever occurs later; 3) as security for the husband's payment of child support, 72 shares of a certain stock were to be held in escrow; 4) in the event the husband defaulted in *any* of the child support payments, the wife *may* petition for sale of these securities. The husband paid the $450 child support for two months and thereafter paid only $300 per month. On November 1, 1968, the Illinois court determined that the husband was in arrears in the amount of $450 and authorized execution without resort to the stock in escrow.

In February 1969, the wife commenced the instant proceeding in California to establish the Illinois decree. As she subsequently remarried and moved to Seattle, she stipulated at the instant hearing (held in December 1969) that the question of modification could also be heard. She testified that at the time she and her husband discussed the terms of the property settlement agreement in the presence of their respective attorneys, the husband agreed that the stock in escrow would not be touched as long

as he held a job, and would be sold only as a last resort in case of an emergency. The deposition of her attorney in the divorce matter confirmed her view.

Her testimony further indicated that as of December 1969, two of the three children were attending college, and that the husband and his present wife had threatened to leave the country. Prior to commencing the instant action, the wife incurred certain expenses for an investigator to locate the husband and determine his assets and employment.

Over the wife's objection, the husband testified that at the time of the property settlement, he could not pay the $450 child support and so indicated to his attorney. His understanding of the escrow arrangement was that the stock could be sold any time that he could not make the support payments.

He further testified that at the time of the divorce, he was residing with and supporting his current wife and their child, as well as her three children by a prior marriage. They moved to California in September 1968, and purchased their present residence for $49,500 and by December 1969 had an equity of at least $7,000. In 1968, his salary of $18,500 was raised to $20,000 in the fall, resulting in total earnings of $19,752.60. In 1969, he had the same job and expected to earn $22,000. He "guessed" that since the entry of the divorce decree, his monthly expenses had increased between $150 and $200; $100 of this amount was related to the increased payments required on the house ($395), consisting of a $295 loan and $100 taxes, as against the $300 a month rental paid previously. Between the entry of the Illinois decree in June 1968 and the instant hearing in December 1969, the husband had paid off the loan against his 1966 Rambler convertible at the rate of $91.80 a month. In addition, he had the company car for his work and a new truck. He acquired the truck at a cost of $4,700 and made monthly payments of $130 as he was "thinking of going into another business."

The trial court: 1) reduced the child support payments to $300 a month as of January 1970, as the result of a change of circumstances, namely, the husband's increased expenses in maintaining his new family; 2) ordered the husband to pay the $2,400 arrearage in child support through December 1969; and 3) concluded that the November 1, 1968 Illinois order was not res judicata on whether the stock held in escrow could be sold without the consent of the wife, and accordingly directed the sale of a portion of the stock to meet the arrearage of $2,400.

The wife first contends that the court should have applied the

law of Illinois to determine whether there had been a change of circumstances; the husband, on the other hand, contends that since the Illinois judgment was established as a California judgment, the more liberal California rule is applicable. Both parties cite *Worthley* v. *Worthley,* 44 Cal.2d 465 [283 P.2d 19], which held at page 474 that ". . . foreign-created alimony and support obligations are enforceable in this state. In an action to enforce a modifiable support obligation, either party may tender and litigate any plea for modification that could be presented to the courts of the state where the alimony or support decree was originally rendered." The question is one of first impression.

*Worthley* involved a foreign separate maintenance decree and our Supreme Court, at page 474, prefaced the final holding, quoted above, with the following language that superficially supports the wife's contention concerning the application of Illinois law: "Proof of changed circumstances in support cases is no more difficult than in custody cases and, as noted above, a California court that has jurisdiction of the subject matter must undertake to adjudicate a plea for modification of custody rights established by a sister-state decree. (*Sampsell* v. *Superior Court,* 32 Cal.2d 763 [197 P.2d 739].) Moreover, in most states the problem of modification is dealt with according to general equitable principles, and the law of the state in which the support obligation originated can be judicially noticed (Code Civ. Proc., § 1875) and applied by the California courts."

A careful analysis of the long and well reasoned opinion in *Worthley,* however, reveals that *Worthley* supports the husband's position here. Our Supreme Court noted at pages 468 and 469 that since the full faith and credit clause of the United States Constitution compels recognition of the foreign decree only as to the marital status of the parties and not as to property rights, California was not constitutionally bound either to enforce or not to enforce a defendant's obligations under a foreign decree, both prospectively and retroactively modifiable. Due process, however, required that the defendant be afforded an opportunity to litigate the question of modification (*Griffin* v. *Griffin,* 327 U.S. 220, 233-234 [90 L.Ed. 635, 642-643, 66 S.Ct. 556]). The court further stated, at page 469, that the United States Supreme Court had clearly indicated that as to either prospective or retroactive enforcement of such obligations, California " 'has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered.' (*Halvey* v. *Halvey, supra,* 330 U.S. 610, 615.)" Thus, the approach of

*Worthley* (and the one still approved by the U. S. Supreme Court)[1] is one of comity.

*Elkind* v. *Byck,* 68 Cal.2d 453 [67 Cal.Rptr. 404, 439 P.2d 316], is helpful here in resolving the question presented. In *Elkind,* our Supreme Court held that a foreign decree purporting to preclude modification of a child support agreement was unenforceable here, and observed at page 459 that full faith and credit was not required for child support judgments, as the divorce decree incorporating child support provisions does not terminate the relationship of parent and child. The court continued at pages 459 and 460: "This case demonstrates why the divorce state should not be permitted to determine the welfare of the child for all time and in all states: More than ten years following the divorce, none of the parties appears to have any connection at all with Georgia; the mother and child reside in New York, and the father resides in California.

"Indeed, by the adoption of the reciprocal support legislation in almost all states (see 9C Unif. Laws Ann. 1 (1957)), the federal system now espouses the principle that no state may freeze the obligations flowing from the continuing relationship of parent and child. [Citations.]"

Here, as in *Elkind,* neither party any longer has any connection with Illinois and the husband's support obligation should not be frozen by the standard Illinois would apply to evaluate his "changed circumstances." Furthermore, the California court that has jurisdiction over both parties and is charged with evaluating his claim of changed circumstances can best exercise its discretion by utilizing its familiarity with living costs in California, and apply the California standard (cf. *Waite* v. *Waite,* 6 Cal.3d 461, 469 [99 Cal.Rptr. 325, 492 P.2d 13]).

■ We turn, therefore, to the wife's contention concerning the sufficiency of the evidence to support the portion of the judgment reducing the husband's child support obligations as of January 1970 from $450 to $300 a month as a result of the increased expenses of his new family. ■ "The trial court has jurisdiction to modify orders for support where the conditions of the parties have changed subsequent to entry of the prior order. [Citations.] Each application for modification must be determined on its own facts, and the exercise of the trial court's discretion in this regard (see *McKee* v. *McKee,* 108 Cal.App.2d 488, 490 [239 P.2d 37]) will not be disturbed unless abuse of that power is shown. [Citation.] Also, the evidence presented must be considered in the light favorable to support rather than to defeat the order determining the

---

[1]*Ford* v. *Ford,* 371 U.S. 187 [9 L.Ed.2d 240, 83 S.Ct. 273]; see Currie, *Full Faith and Credit* (1964) The Supreme Court Review 89 at page 115.

application for modification. [Citation.]" (*Levitt* v. *Levitt*, 62 Cal.2d 477 at p. 483 [42 Cal.Rptr. 577, 399 P.2d 33].)

Here, the only changes of condition shown were the husband's purchase of a new home and a $100 increase in his monthly housing expenses. At the same time, however, his annual income increased from $19,752 to $22,000. Thus, the husband cannot rely on *Bratnober* v. *Bratnober,* 48 Cal.2d 259 [309 P.2d 441], wherein an expected salary increase did not materialize. The wife indicated that the $300 a month did not meet the increased expenses of two of the three children attending college. Accordingly, we conclude that there was insufficient evidence of changed circumstances to warrant the decrease in child support payments, and the court abused its discretion (*Webb* v. *Webb,* 12 Cal.App.3d 259 [90 Cal.Rptr. 565]; *Hansen* v. *Hansen,* 233 Cal.App.2d 575, 591 [43 Cal.Rptr. 729]).

Finally, the wife argues that the court further abused its discretion in directing the sale of some of the securities held in escrow to satisfy the existing arrearage of $2,400. The wife urges that: 1) the stock cannot be sold without her consent; and 2) the sale of a portion of the stock deprives her of the long-range security established by the property settlement agreement for the support of the youngest child, who was only 4 years old at the time of the divorce. We agree.

As noted above, paragraph 14 of the property settlement agreement, merged into the Illinois divorce decree, provided that in the event the husband defaulted "in *any* of the child support payments," the wife *may* petition for the sale of the securities in escrow. The trial court in the instant case overruled the wife's objections and permitted the violation of the terms of the written agreement. The sale ordered by the court is contrary to the express terms giving the wife exclusive discretion to petition for sale of the stock in escrow.

The portion of the judgment appealed from is reversed.

Kane, J., and Rouse, J., concurred.