ESTELLA BING, PLAINTIFF, v. WILLIAM BING, DEFENDANT.

Juvenile and Domestic Relations Court
Bergen County

Decided January 13, 1965

*Mr. Richard W. DeKorte* for plaintiff (*Mr. Nelson G. Gross,* County Counsel, attorney).

*Mr. S. Richard Carlton* for defendant (*Mr. Jacob Schneider,* attorney).

FLANAGAN, J. J. D. R. C. ▇ Defendant moves to dismiss plaintiff's complaint on the ground that this court lacks jurisdiction to hear it. The action was brought under the Uniform Reciprocal Enforcement of Support Act, *N. J. S.* 2A:4–30.1 *et seq.* Plaintiff, a New York resident, sues defendant, a Bergen County resident, for marital support for herself. Her complaint was filed in the Family Court of New York, Kings County, in May 1964, which court then sent it here for hearing and determination, pursuant to said act. Defendant argues that the Juvenile and Domestic Relations Court lacks jurisdiction to hear any marital support case where the parties are no longer husband and wife, including one such as this brought under the reciprocal act.

In support of his motion defendant introduced a certified copy of a South Carolina judgment of divorce *a vinculo matrimonii* entered in his favor in the Aiken County Court of Common Pleas on December 11, 1954. It recites that jurisdiction over defendant wife (who is plaintiff herein) was obtained by publication and mailing, and that she neither answered nor appeared. Defendant argues that jurisdiction over support cases between divorced couples is entrusted by *N. J. S.* 2A:34–8 and 2A:34–23 to the Superior Court exclusively, and that this court is therefore necessarily devoid of such jurisdiction. *N. J. S.* 2A:34–8 provides that

"The superior court shall have jurisdiction of all causes of divorce or nullity and of alimony and maintenance by this chapter directed and allowed. * * *"

*N. J. S.* 2A:34–23 provides that

"* * * after judgment of divorce * * * whether obtained in this state or elsewhere, the court may make such order as to the alimony or maintenance of the wife * * * as the circumstances of the parties * * * shall render fit, reasonable and just * * *."

The answer to defendant's contention is found in the grant to this court of exclusive jurisdiction over all actions arising under the reciprocal act, contained in *N. J. S.* 2A:4–30.9. Said section reads in part as follows:

"* * *° Jurisdiction of all proceedings hereunder shall be vested in the Juvenile and Domestic Relations Court of any county of this State."

The use of the uncompromising word "all" excludes the notion that the Legislature intended any court other than this one to hear cases arising under the reciprocal act.

*N. J. S.* 2A:34–8 and 2A:34–23 were enacted in substantially their present form in 1907 (*L.* 1907, *c.* 216, § 4, *p.* 476, and § 25, *p.* 481, respectively). The Reciprocal Enforcement of Family Support Act, 2A:4–30.1 *et seq.*, was not enacted until 1952 (*L.* 1952, *c.* 197). The two statutory schemes operate independently of each other without friction or overlap, with

the Superior Court exercising jurisdiction over local support actions brought by former wives against their former husbands, and the Juvenile and Domestic Relations Court exercising an identical, coextensive jurisdiction over interstate support suits brought under the reciprocal act by one former spouse against the other. The Legislature's selection of this court to hear such interstate suits was an eminently appropriate and sensible one, because this court is well adapted by reason of its existing support jurisdiction and the informal character of its practice to handle them with the expedition and procedural simplicity that is instinctive in the reciprocal act. The summary hearing and determination enjoined upon this court by *N. J. S.* 2A:4–18 is entirely compatible with the informal spirit that infuses the reciprocal act. For example, nowhere within it is there mention of any pleading other than a complaint. Brockelbank, in his *Interstate Enforcement of Family Support* (1960), a work that deals exclusively with the reciprocal act, states at *page 55*:

"* * * The tendency in modern practice is to consider the function of pleading as more to give notice than to determine issues. Accordingly, issues may be settled orally at the trial or in pre-trial conferences, and the pleadings are usually cut off after complaint and answer."

*R. R.* 6:3–3, applicable to this court, states:

"No formal answer need be filed in writing to any complaint filed in this court."

The permitting, but not requiring, of an answer in this court is consonant with the procedural informality of the reciprocal act; on the other hand, the complaint and answer, and the frequent counterclaim and answer thereto, that are everyday features of matrimonial litigation in the Superior Court, with 20-day periods for answering such complaints and counterclaims, are ill-suited to the informal determinations, uncluttered by successive pleadings, that the reciprocal act apparently contemplates.

■ A suggestion was made during the argument that the South Carolina judgment, through which the husband divorced plaintiff because of her presumed matrimonial derelictions, at the same time destroyed his obligation to support her, because the divorce destroyed the marital relationship upon which his obligation to pay marital support necessarily rested. As previously stated, the wife did not answer or appear in the South Carolina divorce proceeding. Despite the absence of *in personam* jurisdiction aver the wife, defendant's South Carolina divorce is *prima facie* entitled to full faith and credit in New Jersey, at least as far as the dissolution of the marriage is concerned. *Williams v. State of North Carolina* (I), 317 *U. S.* 287, 63 *S. Ct.* 207, 89 *L. Ed.* 279 (1942); *Grunauer v. Graunauer*, 80 *N. J. Super.* 531 (*App. Div.* 1963). But because it was based upon mere constructive service upon her, the South Carolina decree does not bar her from afterwards asserting against her former spouse an *in personam* claim for her support—which is exactly what she is trying to do herein—the full faith and credit clause requiring no more than that this court recognize the *ex parte* South Carolina judgment as competent to dissolve the marriage. *Vanderbilt v. Vanderbilt*, 354 *U. S.* 416, 77 *S. Ct.* 1360, 1 *L. Ed.* 2d 1456, (1957); *Estin v. Estin*, 334 *U. S.* 541, 68 *S. Ct.* 1213, 92 *L. Ed.* 1561, 1 *A. L. R.* 2d 1412 (1948); *Kreiger v. Kreiger*, 334 *U. S.* 555, 68 *S. Ct.* 1221, 92 *L. Ed.* 1572 (1948).

*N. J. S.* 2A:34–24.1, adopted in 1954, reads in part as follows:

"When a husband has secured a judgment or decree of divorce * * * in an action * * * brought in this state or elsewhere, wherein jurisdiction over the person of the wife was not obtained, the court may make * * * orders * * * touching the suitable support and maintenance * * * for the wife * * * as the nature of the case and circumstances of the parties render suitable and proper * * * notwithstanding the securing of such judgment or decree."

The last-quoted statute nullified the earlier holding of *Peff v. Peff*, 2 *N. J.* 513 (1949), that a valid Nevada *ex parte* divorce barred the wife from separate maintenance, because such remedy was statutory in origin and rested upon a husband and wife relationship. Any doubts about said statute's being in conflict with the full faith and credit clause are dispelled by the *Vanderbilt, Estin* and *Kreiger* decisions of the United States Supreme Court mentioned above. The *Estin* case weakened the influence of the full faith and credit clause in interstate marital litigation by introducing the concept of a "divisible divorce," that is, the notion that a judgment of divorce based upon mere constructive service upon a wife does not impair a previous support judgment entered in her favor in another court that had *in personam* jurisdiction over both of the parties, even though the full faith and credit clause at the same time demands unhesitating nationwide recognition of the competency of such *ex parte* divorce to destroy the marriage relation itself. The *Kreiger* case followed the reasoning of the *Estin* case and reached a similar conclusion on substantive facts resembling those in *Estin*. The *Vanderbilt* case extended the concept of a "divisible divorce" to instances where the wife did not even start her support action until after the *ex parte* foreign divorce had been entered.

Because the *Vanderbilt* decision rules the case *sub judice*, a look at its facts is required. The Vanderbilts separated in California in 1952; in 1953 the wife moved to New York, and a month later he sued for divorce in Nevada. She was not served in Nevada and did not appear there. In 1953 a Nevada divorce judgment was entered which, among other things, purported to release both parties from all subsequent marital obligations, presumably including further support for the wife. Two years later, in 1955, she sued in New York for separation and alimony. He pleaded the Nevada divorce in bar, arguing that the full faith and credit clause required the New York court to treat it as destroying both the marriage and his obligation to furnish further support.

He distinguished the *Estin* and *Kreiger* cases from his, pointing out that in both *Estin* and *Kreiger* there were *in personam* judgments for support that antedated the entries of the foreign *ex parte* divorces. Justice Black, writing for the majority (Justices Frankfurter and Harlan dissented), held that the circumstance that the wife's right to support had not been reduced to judgment before the entry of the husband's *ex parte* divorce was "not material"; that since the wife was not subject to the jurisdiction of the Nevada court, it "had no power to extinguish any right which she had under the law of New York to financial support from her husband * * * a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant. * * * Here, the Nevada divorce court was as powerless to cut off the wife's support rights as it would have been to order the husband to pay alimony if the wife had brought the divorce action and he had not been subject to the divorce court's jurisdiction."

██ Plaintiff, therefore, is not barred by her former husband's previous *ex parte* South Carolina divorce from now suing him for marital support in the present subsequent proceeding under the reciprocal act, said divorce being founded upon mere constructive service upon her. This court not only has jurisdiction to hear and decide plaintiff's suit, but its jurisdiction over said suit is exclusive. Defendant's motion to dismiss is denied and the court will now receive sworn proofs for the purpose of determining whether defendant is obligated to support his former wife. Such obligation, if any, will be ascertained by applying to the facts the pertinent rules of substantive New Jersey law. *Daly v. Daly,* 21 *N. J.* 599, 608 (1956), affirming 39 *N. J. Super.* 117, 121 (*Juv. & Dom. Rel. Ct.* 1956); *Coumans v. Albaugh,* 36 *N. J. Super.* 308, 311 (*Juv. & Dom. Rel. Ct.* 1955).