MARLENE C. SEDELMEYER, PLAINTIFF, v.
ANTHONY J. SEDELMEYER, DEFENDANT.

Juvenile and Domestic Relations Court
Bergen County

March 21, 1979.

*Ms. Marianne E. Manning* for plaintiff (*Messrs. Jones* and *Cuccio,* attorneys; *Ms. Manning* on the brief).

*Mr. Ralph A. Ferro* and *Ms. Nancy C. Ferro* for defendant (*Messrs. Ferro, Lamb & Kern,* attorneys; *Mr. Ferro* on the brief).

KRAFTE, J. J. D. R. C. This matter comes before this Court by motion filed by defendant to dismiss the complaint filed pursuant to the Uniform Reciprocal Enforcement of Support Act, *N. J. S. A.* 2A:4–30.1 to 30.23 (hereinafter URESA) alleging that this court lacks jurisdiction to enter the support order sought. A brief background leading to the filing of this motion will shed light on the problem.

Marlene C. Sedelmeyer, plaintiff, and Anthony J. Sedelmeyer, defendant, shared a marital abode in Pennsylvania until June 1978. Plaintiff instituted an action in the Court of Common Pleas of Lancaster County, Civil Division, seeking a divorce from the bonds of matrimony. Defendant moved to New Jersey in June 1978. On August 18, 1978 a complaint was filed by plaintiff in the Court of Common Pleas, Lancaster County, Criminal Division, pursuant to that State's URESA (62 *P. S.* §§ 2043–1 to 42; 42 *Pa. C. S. A.* §§6741 to 6780) seeking support from defendant for herself and the two children of the marriage. This complaint was certified by said Court of Common Pleas and forwarded to the Bergen County Juvenile and Domestic Relations Court for filing and procedure against defendant according to the provisions of URESA as enacted by New Jersey. The complaint was received by this court August 29, 1978.

On February 21, 1979, a motion by defendant seeking an order declaring the Court of Common Pleas in Pennsylvania, aforesaid, as the proper forum to determine the support obligations, was argued before this court. At that time additional facts were presented to the court to the effect that during February 1979 defendant had been transferred

by his employer to Connecticut and had taken up residence there. He has no present residential ties to New Jersey. March 7, 1979 was set as the date for presentation of arguments to the court pertaining to *in personam* jurisdiction of defendant in light of these new facts. Thus, the issue to be resolved is whether there is personal jurisdiction over a defendant under URESA where plaintiff filed the complaint in Pennsylvania, her residence, where the complaint was certified and transmitted to New Jersey, where the defendant was served with process in New Jersey and where defendant subsequently moved to another state, which state is *also* a signatory to URESA.

As heretofore stated, URESA has been adopted by Pennsylvania and New Jersey. Clear legislative intent is gleaned from the very opening statement of the act: "The purposes of this act are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." *N. J. S. A.* 2A:4–30.1. The act provides a procedure whereby support for a wife or child may be easily and inexpensively obtained from a husband or father in another state without limiting the proceedings to those against an absconding husband or father. *Daly v. Daly,* 39 *N. J. Super.* 117, 125–126 (J. D. R. C. 1956), aff'd 21 *N. J.* 599 (1956).

Defendant has stipulated that he was personally served with process while he was present and living in New Jersey. The act requires that the obligor, *i. e.,* any person owing a duty of support (*N. J. S. A.* 2A:4–30.2(g)), be present in the responding state *during the period for which support is sought,* and the obligor is presumed to have been present until otherwise shown. *N. J. S. A.* 2A:4–30.7. The primary traditional foundation for *in personam* jurisdiction is the physical presence of the defendant in the state where an action is brought. *Mackay v. Avison,* 82 *N. J. Super.* 92 (App. Div. 1964). Defendant was present in New Jersey when the New Jersey complaint was filed and when process was served; it would clearly be repugnant to orderly process

if a defendant were capable of defeating jurisdiction merely by moving after a complaint was filed and/or service made upon him.

Since defendant was present in New Jersey when process was served, this court finds that it was invested with continuing personal jurisdiction over him.

Having determined that this court has jurisdiction over the person of defendant, the court will address the question of whether to elect, in its discretion, to exercise this jurisdiction. This court has been granted equity powers pursuant to *R.* 5:2, which reads in pertinent part as follows: "These rules shall be so construed as * * * to provide equitable relief in matters within the jurisdiction of the court involving the domestic relation." The equity maxim that decrees which would be vain or nugatory should not be made has been considered in the light of defendant's present residence in Connecticut. *McClusky v. O'Brien,* 137 *N. J. Eq.* 20 (Ch. 1945) ; *Parivash v. Yousef,* 89 *N. J. Super.* 133 (Ch. Div. 1965), mod. 94 *N. J. Super.* 403 (App. Div. 1967).

Defendant has no known property in this State and New Jersey's interest in this matter arises only because it has adopted URESA and it fortuitously happened to be the state in which defendant resided when the URESA proceedings, as stated above, were filed. Connecticut has also enacted URESA (*C. G. S. A.* §§ 17-327 to 355b now §§ 46b-180 to 208, and §§ 46b-209 to 211) so plaintiff could proceed in that state for support for such time as defendant was or remains a Connecticut resident.

However, a significant fact was developed at oral argument, namely, that defendant *is employed by a corporation which is authorized to do business in New Jersey and has a registered agent for service of process in this State.* Additionally, the corporation also maintains a small manufacturing plant in Bergen County.

Under appropriate statutes, a judgment establishing arrears in this court may be converted into a judgment of the Superior Court, Law Division (*N. J. S. A.* 2A:4-19.1), and

may further be enforced through a wage execution against defendant's salary (*N. J. S. A.* 2A:17–50). Pursuant to *N. J. S. A.* 2A:17–56, the amount specified in an execution may exceed 10% of defendant's annual salary where it exceeds $7,500. Additionally, where support payments are more than 45 days overdue, an order may be made directing that a priority execution issue against defendant's salary for the full amount of arrears and for satisfaction of current payments. *N. J. S. A.* 2A:17–56.1. Thus, mechanisms exist for this court to enforce any order of support based upon a finding of duty and entered pursuant to URESA.

In addition to the contention that defendant's relocation in Connecticut defeats *in personam* jurisdiction, defendant advances three grounds to elicit a finding that there is no jurisdiction to hear this matter.

1. Defendant contends that subject matter jurisdiction is absent because the marital *res* is the subject matter, neither party resides in New Jersey and, therefore, New Jersey has no vested interest in the marital *res*. Thus defendant claims that no support should be ordered. However, this is an action for support under URESA, not an action to dissolve the marriage of the parties. The subject matter at hand is an inquiry into the duty and ability of defendant to provide support for his wife and children. In support of his contention, defendant asserted the following:

Thus the marital status itself is a *res* which can be dealt with by the Court pursuant to an exercise of *in rem* jurisdiction \* \* \* [p]ersonal obligations deriving from the marital relationship or its termination, including, among other things, support and alimony, are dependent for adjudication on the Court's acquisition of either personal jurisdiction over [the] defendant or *quasi in rem* jurisdiction over property. *Drobney v. Drobney*, 146 *N. J. Super.* 317, 323 (App. Div. 1977).

It is irrelevant that jurisdiction over the marital *res* is absent because this is not a divorce action. No action can or will be taken by this court which will affect the marital *res;* therefore reliance on *Drobney, supra* (as applied to subject

matter jurisdiction) is misplaced. *Drobney* also dealt with a personal obligation necessitating *in personam* jurisdiction of defendant or *quasi in rem* jurisdiction. Indeed, the reasoning of this court is in accord with *Drobney*.

Further, the matter revolves around the question of duty of support which is a personal obligation *deriving* from the marital relationship, and the court has ascertained that it has acquired personal jurisdiction over defendant. Since *in personam* jurisdiction is not merely a "mechanical or quantitative concept," it necessitates an attempt to balance the question of inconvenience as to the parties in relation to the fair and orderly administration of the law. *"In personam* jurisdiction is an expanding concept. Its course has not yet been fully chartered in our higher courts." *Magyar v. American Tel. & Tel. Co.,* 88 *N. J. Super.* 18, 28 (Law Div. 1965). Accordingly, this court deems the absence of jurisdiction over the marital *res* to be immaterial to these proceedings.

2. Defendant next contends that principles of comity dictate that Pennsylvania courts have precedence in this matter because the Court of Common Pleas acquired *in personam* jurisdiction over both parties in a divorce action instituted in April 1978 and a sum of money is being held in escrow under the jurisdiction of that court, which could be used to insure plaintiff's support since defendant does not reside in Pennsylvania. Defendant further refers to the fact that Pennsylvania does not allow alimony, while New Jersey does, as an area of "potential conflict." The concepts of comity are not new to our courts.

Considerations of comity forbid interference with the prosecution of a proceeding in a foreign jurisdiction capable of affording adequate relief and doing complete justice, unless there be a *special equity* sufficient in conscience to stay the hand of the defendant. The question is not the existence of the power but the propriety of its exercise in the given case. The rule of comity is grounded in the policy of avoiding conflicts of jurisdiction, unless upon strong grounds, and the general principle that the court which first acquires jurisdiction of the issue has precedence. *O'Loughlin v. O'Loughlin,* 6 *N. J.* 170, 179 (1951). [Emphasis supplied]

Followed in *Stultz v. Stultz,* 15 *N. J.* 315, 319 (1954), and *Fantony v. Fantony,* 21 *N. J.* 525, 533 (1956).

It appears that the Court of Common Pleas, Civil Division, has the power to dissolve the marriage only and has no power regarding support. Support proceedings are *quasi*-criminal, while criminal sanctions are provided in certain cases of willful neglect to maintain a wife or children. 18 *C. P. S. A.* §§ 4321–4322. Plaintiff contends, therefore, that comity is inapplicable in this case. Defendant's contention that comity dictates that the entire matter be left to the Pennsylvania court was based on his offer to submit himself to the personal jurisdiction of that court and the fact that there is no permanent alimony in Pennsylvania, with two exceptions not pertinent here.

"Comity is a rule of convenience and expediency." *O'Loughlin supra,* 6 *N. J.* at 181. It "is neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will upon the other." *Fantony, supra,* 21 *N. J.* at 533.

It is not necessary for this court to attempt to ascertain and interpret the status of the pertinent divorce and support law of Pennsylvania in order to decide whether comity is applicable and, if so, whether this court should defer to the Pennsylvania court in these proceedings. The present controversy comes before this court under the auspices of URESA which has as its purposes the objective of improving and extending enforcement of duties of support and making applicable laws uniform. *N. J. S. A.* 2A:4–30.1. An act such as this fosters cooperation between states which enact substantially similar laws. *N. J. S. A.* 2A:4–30.11 provides that the initiating state (here Pennsylvania) will certify the petition if *it* determines that a duty of support probably exists, and transfer the complaint to the responding state (here New Jersey). Pennsylvania has done this; clearly, an insurmountable conflict due to the absence of permanent alimony in Pennsylvania has not been contemplated there, nor was it even considered.

The act itself was carefully drafted to avoid conflicts of laws, as is evidenced by *N. J. S. A.* 2A:4–30.7 which provides that the duty of support is determined under the law of the *responding* state. Whether the Court of Common Pleas, Civil Division, can deal with support or not has no bearing on this matter. Surely comity need not be a hindrance or even a principle to consider in a case involving two states which have adopted URESA, which act specifically states: "The remedies herein provided are in addition to and not in substitution for any other remedies." *N. J. S. A.* 2A:4–30.3.

Subsequent to the arguments on the motion this court received a copy of Order No. 1199 of 1978 of the Court of Common Pleas, Lancaster County, Pennsylvania, Domestic Relations, dated March 15, 1979. Defendant's petition for a hearing in Pennsylvania and determination of duty to support under Pennsylvania law was dismissed by the Pennsylvania court which stated: "* * * the applicable law regarding the duty to support must be presumed to be that of New Jersey, and the ultimate decision regarding the duty would remain with that court." Thus, defendant's contention that this New Jersey court should defer to the Pennsylvania Court has been rendered groundless. Plaintiff's complaint under URESA is no longer her most expedient remedy; it now represents her only remedy.

Therefore, this court determines that the principles of comity are inapplicable and thereby do not prevent this court from continuing to a final determination of the complaint on its merits.

3. Lastly, defendant contends that the action should be dismissed because plaintiff has not made a prima facie showing of necessity of child support, for defendant contends that he already voluntarily supports their two children. This question need not be decided at this juncture. Rather, the factual expositions would properly be made at a full hearing. It is apparent that plaintiff seeks an enforceable *order* dictating the extent of support defendant should continue to provide for the two children, as well as an amount for her own support.

*N. J. S. A.* 2A:4–18 grants Juvenile and Domestic Relations Courts concurrent jurisdiction with other courts in certain domestic matters, and *N. J. S. A.* 2A:4–19 grants the Juvenile and Domestic Relations Court all of the powers at the disposal of the other courts hearing similar matters. Therefore, as above stated, the Juvenile and Domestic Relations Court may exercise equitable powers while discharging its responsibilities under its limited jurisdiction. *N. J. S. A.* 2A:4–30.1 *et seq.,* which constitute URESA, should be read *in pari materia* with *N. J. S. A.* 2A:4–18 and *N. J. S. A.* 2A:4–19 since they all deal with the subject matter of support and the powers of the Juvenile and Domestic Relations Court with respect to actions for support.

The Juvenile and Domestic Relations Court has been endowed with exclusive jurisdiction over all matters brought pursuant to URESA, *N. J. S. A.* 2A:4–30.9; *R.* 5:6–3(c); *Bing v. Bing,* 86 *N. J. Super.* 246, 252 (J. D. R. C. 1965). Therefore, it must be vested with all the usual powers of a court competent to hear these matters. Since this court reached the determination that it has *in personam* jurisdiction over defendant, the decision to elect, in its discretion, to exercise that jurisdiction followed consideration of certain facts and equities of the case. Plaintiff filed this complaint in August 1978 and has not received any support from defendant since June 23, 1978. The matter was not listed for a hearing until December 14, 1978; there were three adjournments and the first court hearing for the matter was February 21, 1979 at which time the initial arguments on the present motion were made by counsel. As he had been served with process while present in New Jersey, defendant could not have been heard to object if the hearing had proceeded and an order entered then and there before he moved to Connecticut. Neither is this a case where defendant had moved before service was made, in which case, pursuant to *N. J. S. A.* 2A:4–30.12(b), New Jersey would have advised Pennsylvania that it could not obtain personal jurisdiction of defendant and the only alternative for plaintiff would

have been to refer the complaint to the proper court in Connecticut.

Under the present factual postulate, if plaintiff is now required to proceed in Connecticut, she will have no recourse for obtaining support for the time defendant was present in New Jersey (approximately six months), since Connecticut could not obtain personal jurisdiction over defendant until February 1979 when he moved there, and would, of course, be without jurisdiction to order any support during the New Jersey residence period.

This court has determined that it obtained personal jurisdiction over defendant pursuant to *N. J. S. A.* 2A:4–30.7 and elected to exercise that jurisdiction. If at a subsequent hearing a duty of support is found under New Jersey law (*N. J. S. A.* 2A:4–30.7), an order of support will be entered and the court will consider utilizing its discretionary equitable power to make such order retroactive to August 29, 1978, the date the complaint was received and filed in New Jersey. *N. J. S A.* 2A:4–18 is to be liberally construed to accomplish its purpose. *D v. D,* 56 *N. J. Super.* 357, 361 (App. Div. 1959); *Ricci v. Ricci,* 96 *N. J. Super.* 214 (J. D. R. C 1967). Clearly, "any court dealing with these matters must necessarily be endowed with considerable discretion, for no two cases are exactly alike and each case must be taken upon its own facts." *Ricci, supra* at 223–224. This was a case involving a support action by a deserted wife brought in Juvenile and Domestic Relations Court, wherein the court stated that including an order for payment of back rent in an order for prospective support was a necessary substitute for its inability to provide *pendente lite.* A retroactive support order in the present action, also brought in Juvenile and Domestic Relations Court, may be viewed as a similar remedy under an act which is remedial in nature and is, therefore, to be liberally construed. *Ricci, supra* at 227.

In determining whether the act should be applied to, and jurisdiction exercised in, a given case, the court should consider the basic

policy as well as the words of the act. A construction should be adopted which will advance the policy and true sense of the statute. "The reason of the statute prevails over the literal sense of the terms; the obvious policy is an implied limitation on the sense of general terms and a touchstone for the expansion of narrower terms." *Fischer v. Fischer*, 13 *N. J.* 162, 168 (1953).

"In construing the act the court must also be mindful of the injunction that every 'endeavor should be made by the courts to render this statute operable, for the objectives of the legislation are very worthy.' *Pfueller v. Pfueller*, 37 *N. J. Super.* 106 (App. Div. 1955)." [*Daly, supra,* 39 *N. J. Super.* at 127–128]

These directives support the conclusion that an eventual determination of support made in an URESA procedure may be retroactive. The "[d]uties of support applicable under this act are those imposed or imposable" under the laws of New Jersey as the state "where the obligor was present during the period for which support is sought." *N. J. S. A.* 2A:4–30.7. Therefore, this court determines that the Juvenile and Domestic Relations Court may exercise its discretion and order support to be retroactive to the date when the complaint was filed in this State in an URESA matter. *Cf. Christiansen v. Christiansen,* 46 *N. J. Super.* 101 (App. Div. 1957); *Salvatore v. Salvatore,* 73 *N. J. Super.* 373, 381 (App. Div. 1962.) Since defendant moved from New Jersey in February 1979 and *N. J. S. A.* 2A:4–30.7 requires the obligor's presence during the period for which support is sought, a prospective order for support beyond February will not be considered at the hearing.

Defendant's motion is denied. This court retains jurisdiction.