[No. B003176. Second Dist., Div. Four. May 30, 1984.]

DONALD R. SCOTT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DENISE SCOTT,. an Incompetent Person, etc., Real Party in Interest.

**COUNSEL**

Overton, Lyman & Prince, George M. Lindahl and Gary L. Sperling for Petitioner.

No appearance for Respondent.

Marvin M. Mitchelson and Sharon G. Webster for Real Party in Interest.

**OPINION**

**WOODS, P. J.**—By petition for writ of mandate, a California resident sued for support by his adult daughter who is a New York resident, seeks to vacate a trial court order denying his motion for summary judgment. The motion was based upon the contention that the law of New York, which does not recognize the claimed support obligation, should apply.

The issue of first impression presented is whether choice of law principles require application of California law, which recognizes a parental obligation to support dependent adult children, or application of New York law, which negates such obligation for resident parents.

The material facts are simple and not disputed. Defendant is a California resident and is the natural father of plaintiff. Plaintiff is the 28-year-old daughter of defendant and is now, and has been for at least one year prior to commencement of the action, a resident of New York. Plaintiff's action commenced in respondent court in February, 1982, alleges that her mental

disability renders her unable to work to support herself, and that she is thus financially "in need" within the meaning of section 206 of the Civil Code.

Defendant moved for summary judgment on the ground that under California's "governmental interest approach" to choice of law questions, New York is the only state having a true interest in the application of its law. Defendant asserts that the only material facts for purposes of this motion are the states of residence of the parties.

Plaintiff's opposition to the motion contends that defendant's conclusions under the California governmental interests analysis are incorrect. Specifically, plaintiff contends that this case presents a "false conflict" where New York has no interest in seeing its law applied and California has either a minimal interest or no interest. She contends that California law should apply.

Plaintiff submitted the declaration of a New York psychiatrist, Michael Kenin, M.D., which states that he has treated plaintiff since 1974, and that she suffers from a mental disability which renders her "extremely disturbed" and unable to "function independently." In his opinion, plaintiff's condition will remain "extremely guarded" under the treatments now affordable by her but "might change for the better" if she is able to afford long term hospitalization and more costly intensive individual psychotherapy.

After hearing argument, respondent denied defendant's motion. Respondent determined that section 206 of the California Civil Code evidenced a strong state interest in preventing adult children from becoming public charges and in promoting "familial responsibilities and hence strengthen[ing] the family unit." It found that New York's refusal to impose a similar support obligation on its resident parents does not mean New York has an interest in denying support to a dependent adult child residing there when support could be available from a source other than a New York resident parent or the State of New York itself.

## I

█ The procedure employed by California courts to resolve a "choice of law" question under the governmental interest approach is as follows: (1) determine whether the law of the two or more states involved is different on the subject at hand; (2) determine whether each of the states has a legitimate interest in the application of its own law and policy which results in a true conflict or whether the apparent conflict is false because only one state has such an interest; and (3) if more than one state has such an interest,

ascertain the potential "comparative impairment" to the competing interests (i.e., which state's interest would be most frustrated by application of the law of the other state and which state's interest shows a greater "comparative pertinence" to the action). (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 166 [148 Cal.Rptr. 867, 583 P.2d 721]; *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 579-582 [114 Cal.Rptr. 106, 522 P.2d 666]; *Reich* v. *Purcell* (1967) 67 Cal.2d 551, 553-556 [63 Cal.Rptr. 31, 432 P.2d 727].)

In the underlying action, it is apparent that California and New York law are squarely in conflict as to whether resident parents should be legally obligated to support their needy adult children.

California Civil Code section 206 has, in relevant part, provided in substance since 1872: "*Parents and children; reciprocal duty of support; . . .* [¶] It is the duty of the father, the mother, and the children of any person in need who is unable to maintain himself by work, to maintain such person to the extent of their ability." (*Paxton* v. *Paxton* (1907) 150 Cal. 667, 669 [89 P. 1083]; *Woolams* v. *Woolams* (1952) 115 Cal.App.2d 1, 6 [251 P.2d 392]; *Bryant* v. *Swoap* (1975) 48 Cal.App.3d 431, 438 [121 Cal.Rptr. 867].)

In direct contrast to California law, New York Social Welfare Law section 101 has provided since 1966 that: "'1. The spouse or parent of a recipient of public assistance or care or of a person liable to become in need thereof shall, if of sufficient ability, be responsible for the support of such person, *provided that a parent shall be responsible only for the support of a minor child.*'" (*Jones* v. *Jones* (1966) 51 Misc.2d 610 [273 N.Y.S.2d 661, 665].) (Italics in original.)

New York Domestic Relations Law, section 32 provides a similar support obligation making "[p]arents liable for support of their child or children *under 21 years of age*" whether the parent and child reside within the same state or reside in different states having similar or reciprocal support laws.

Prior to 1966 dependent adult children had been entitled under New York law to support from financially able New York resident parents irrespective of where the child resided. (See *Dabbs* v. *Burrell* (1967) 53 Misc.2d 349 [278 N.Y.S.2d 436].)

The state interest of New York underlying the 1966 amendment to its Social Welfare Law, section 101 (and by analogy the 1967 conforming amendment to its Domestic Relations Law, § 32) is suggested by the comments of the proponent of that amendment. In *Jones* v. *Jones, supra,* 273

N.Y.S.2d 661, it was observed: "Elimination of responsibility of parents for an adult child who is disabled was clearly intended as a matter of public policy. Governor Rockefeller in asking for the enactment of the law [citation] stated: [¶] '. . . The legislation I have submitted . . . limits the class of relatives responsible for such support by eliminating the financial responsibility of a parent for an adult child who is blind or disabled. . . . [¶] These far reaching limitations on the financial responsibility of relatives for support of the needy will lift an often heavy burden on those obligated to pay for assistance under existing State laws. Experience has shown that the financial responsibility of a broad class of relatives, imposed by statute, is more often a destructive, rather than cohesive, factor in family unity. . . .' " (At p. 666.) (See also *Dabbs* v. *Burrell, supra,* 278 N.Y.S.2d 436.)

The ostensible purposes behind limiting parental legal support obligations to children under 21 years of age are thus two-fold: primarily, to protect resident New York parents from financial burden, and, secondarily, to obtain an expected derivative benefit to family unity.

Both of New York's avowed interests in negating the obligation to support needy adult children are essentially local in nature. The interest in financial protection of New York resident parents is necessarily exclusively local. (Cf. *Hurtado* v. *Superior Court, supra,* 11 Cal.3d at pp. 581-586.) However, the intensity of the interest in avoiding family disunity appears to diminish where the child is the only family member residing in New York.

Although plaintiff contends and respondent determined that New York has no interest in denying its resident needy adult children parental support where New York parents are not involved, this reasoning ignores the fact that at least the proponent of the New York law has mentioned a secondary purpose underlying negation of the support obligation. This second purpose, as pointed out above, is attenuated but not entirely negated by the absence of a New York parent.

The primary state interest underlying California's statutory imposition of a reciprocal support obligation benefiting needy adult children and needy parents has long been identified in case law in the context of needy parents. "The *main purpose* of the statutes seems to be to protect the public from the burden of supporting poor people who have children able to support them." (Italics added.) (*Duffy* v. *Yordi* (1906) 149 Cal. 140, 142 [84 P. 838]; *Swoap* v. *Superior Court* (1973) 10 Cal.3d 490, 503 [111 Cal.Rptr. 136, 516 P.2d 840]; *Radich* v. *Kruly* (1964) 226 Cal.App.2d 683, 686 [38 Cal.Rptr. 340].) This same "main purpose" has also been recognized in the context of needy adult children ". . . to protect the public from the burden of supporting a person who has a parent able to support her." (*Woolams* v.

*Woolams, supra,* 115 Cal.App.2d at p. 6; *Bryant* v. *Swoap, supra,* 48 Cal.App.3d at p. 438.)

As to the interest of California in application of its support law to this action, the "main purpose" of relieving the state of the burden of support when the needy adult child has financially capable parents will not be served by application of California law (nor be frustrated by application of New York law) because New York, not California, will bear the burden of support if the California father is not compelled to provide support.

However, California also appears to have an additional interest in application of its support obligation here. California has long manifested a strong public policy of fostering the "best interests of the child" and the traditional notion of internal family responsibility. With reference to minor children, family unity is linked to the health, safety, and welfare of the child. (Civ. Code, §§ 4600, subd. (a), and 4608.) That is, parental contact as well as financial support are encouraged. (Civ. Code, §§ 4600, subd. (a), and 4608.) The benefit of family support and contact does not necessarily terminate when the children become adults. Civil Code section 206 imposes a *reciprocal* duty of support upon parents and adult children alike. This reciprocal duty evidences the traditional concept of a family unit being primarily responsible for the support of those of its constituents who are unable to support themselves. This reciprocal statute reflects a different view than that of New York's pre-1966 one-way duty owing only from parents to needy children. California, no less than New York, has a strong interest in promoting family unity. Merely because the two states have statutes reflecting differing social philosophies as to how best to attain that goal does not support the conclusion that New York's 1966 shift in philosophy belies the integrity of California's interest or the reasonableness of its approach.

When California's concern for the best interests of the child and familial responsibility is considered in conjunction with section 206 of the Civil Code, it becomes apparent that this concern extends to a family where the father resides in California and the needy adult child resides elsewhere. In the same manner that New York might assert a continuing interest in family unity between nonresident parents and a resident needy adult child, so California's pervasive concern for the child and family unity cannot be said to terminate where the resident parent's needy adult child resides elsewhere. The statute does not restrict this benefit to resident children.

Thus, both California and New York appear to have at least incidental interests in application of their respective laws in the underlying action.

Ordinarily at this point in the governmental interest analysis the ostensible interests discussed above would be deemed to create a "true conflict" re-

quiring resort to "comparative impairment analysis." (*Offshore Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d at pp. 166-167.)

This analysis is unnecessary, however, because of the adoption by California and New York of a predetermined choice of law criterion in matters of child support enforcement involving two states.

■■■ This criterion, requiring application of the law of the state where the obligor is present, is the controlling choice of law rule embodied in the Uniform Reciprocal Enforcement of Support Act (as well as the Revised Act of 1968) and requires that the California law apply here. This reciprocal adoption of the choice of law rule also evidences a willingness on the part of New York to waive whatever governmental interest it might have in application of its law in the underlying California support action.

In 1953 California adopted the Uniform Reciprocal Enforcement of Support Act (hereafter the URESA) and later adoption of the Revised URESA in 1968. This uniform act provides a predetermined choice of law rule in matters involving child support in the interstate context. The rule requires application of California law in the underlying action as the law of the state where the alleged obligor is present.

Section 1655 of the California Code of Civil Procedure (wherein the Uniform Act is codified in §§ 1650-1699) provides: "*Duties of support arising under the law of this State,* when applicable under Section 1670, *bind the obligor, present in this State, regardless of the presence or residence of the obligee.*" (Italics added.) This provision is section 4 of the URESA.

Section 1670 of the Code of Civil Procedure provides in pertinent part: "Duties of support applicable under this title *are those imposed under the laws of any state where the obligor was present for the period during which support is sought.* . . ." (Italics added.) This provision is section 7 "[Choice of Law]" of the URESA.

■■■ The term "duty to support," as contemplated by the California version of the URESA means ". . . a duty of support whether imposed or imposable by law or by order, decree, or judgment . . . ." (Code Civ. Proc., § 1653, subd. (b); URESA, § 2, subd. (b).) This clearly includes any duty existing under statutory law even " 'if it never has received judicial attention [or previously been reduced to the form of an order or judgment] and now is the basis of litigation for the first time under the Act.' " (*Banks*

v. *McMorris* (1975) 47 Cal.App.3d 723, 727 [121 Cal.Rptr. 185]; accord *Com. of Virginia* ex rel. *Halsey* v. *Autry* (1982) 293 Md. 53 [441 A.2d 1056].) Further, section 1652 provides: "The purposes of this title are to improve and extend by reciprocal legislation the enforcement of duties of support *and to make uniform the law with respect thereto.*" (Italics added.)

In *Elkind* v. *Byck* (1968) 68 Cal.2d 453 [67 Cal.Rptr. 404, 439 P.2d 316], Chief Justice Traynor wrote for a unanimous Supreme Court in determining the choice of law question presented concerning the child support obligation owing from a California father to his nonresident minor children. The father was sued for spousal and child support by the divorced mother, living in New York with the children, under the Uniform Reciprocal Enforcement of Support Act. The action was based upon a Georgia divorce decree specifying a "one-for-all-lump-sum" settlement for child support. The wife sought to avoid the barring effect of the Georgia settlement upon further child support obligations of the father. It was held that under the URESA, which had been adopted by both Georgia and California at that time, the law of California, the state where the obligor is present during the period for which support is sought, must be applied. (*Id.,* at pp. 456-457.) (Accord *Neff* v. *Johnson* (Tex.Civ.App. 1965) 391 S.W.2d 760; *Bing* v. *Bing* (1965) 86 N.J.Super. 246 [206 A.2d 606]; *Gemmiti* v. *Beagle* (1978) 94 Misc.2d 588 [405 N.Y.S.2d 225, 227-228]; *O'Hara* v. *Floyd* (1972) 47 Ala.App. 619 [259 So.2d 673]; cf. 9A West's U.Laws Ann. (1979) U. Reciprocal Enforcement of Support (1968 rev. act) §§ 4 and 7.)

It has been judicially recognized that California's purpose in adopting the Uniform Reciprocal Enforcement of Support Act (now the "Revised Uniform Reciprocal Enforcement of Support Act of 1968") was to provide a person in one state with an expeditious means to secure support from a person in another state who is legally liable for support. (*Banks* v. *McMorris, supra,* 47 Cal.App.3d at p. 728, cert. den. 423 U.S. 871 [46 L.Ed.2d 101, 96 S.Ct. 137]; *Clark* v. *Clark* (1966) 246 Cal.App.2d 619, 622 [54 Cal.Rptr. 875].) The particular purpose of aiding needy children whose parents seek to abandon them by traveling to another state other than that where the child resides has also been noted. (See 34 Ops.Cal.Atty.Gen. 228, 229-230 (1959).)

Accordingly, sections 1652, 1655, and 1670 of the Code of Civil Procedure, read in conjunction with the pervasive public policy of California to effectuate the best interests of children and family unity, compels the conclusion that California has a significant interest in and an expectation of the application of Civil Code section 206 in the underlying action.

It is of further significance that the state of New York has also adopted the URESA and that its sections 4 and 7, entitled "choice of law," thereof

are identical (but for the necessary cross-reference to different section numbers) to sections 1655 and 1670 of our Code of Civil Procedure, respectively. (9A West's U.Laws Ann., *supra,* at pp. 661, 672.)

In *Anonymous* v. *Anonymous* (1963) 38 Misc.2d 961, 962 [239 N.Y.S.2d 315, 317], it was observed: "The presence of the obligor as a test of the choice of law applicable has worked well. It is simple. In the great majority of cases, it is often the application of the law of the responding state where the obligor is found and has his day in court. So in most cases, the court will be applying its own law."

■ Thus, the mutual adoption by California and New York of the URESA choice of law criterion for interstate child support enforcement is tantamount to a formal agreement between these states (and the 49 other states, the District of Columbia and Guam, Puerto Rico, and the Virgin Islands which have adopted either the original act or the Revised act of 1968) that in all child support matters involving these two states, the controlling choice of law criterion is the place where the alleged obligor is present.

The significance of this rule is not altered by the fact that plaintiff commenced her action directly in California instead of following the procedures provided in the URESA by filing in the New York county of her residence and having that court certify and transfer the action to the California superior court for the county of her father's residence. Both California and New York expect, by virtue of their mutual adoption of the URESA choice of law criterion, that California law concerning child support obligations will be applied under the present circumstances. (See Code Civ. Proc., §§ 1676 and 1680.) This promotes the stated purpose of the URESA to "improve and extend . . . the enforcement of duties of support and to make uniform the law with respect thereto." (Code Civ. Proc., § 1652.) To ignore this agreed criterion and engage in the standard evaluation of "comparative impairment" would generate unwanted case-by-case rumination in a special area where the states have expressly agreed to a clear, simple, and consistent answer.

Merely because plaintiff here did not elect to proceed under the URESA by initiating her action in New York, does not support a conclusion that California has less interest or expectation in the application of its law to the underlying action.

## II

■ An additional, ostensible issue, not raised by the parties, is whether section 206 of the Civil Code is violative of the constitutional guarantee of

freedom of interstate travel and migration. That is, does California's imposition of this support obligation infringe upon this right in the constitutional sense because a New York resident parent might be deterred from moving to California for fear of incurring an additional support obligation?[1]

However, review of the case law reveals that the constitutional guarantee is not violated merely because one state's laws impose support obligations greater in scope or extent than the laws of another state. Neither is there any aspect of section 206 of our Civil Code which violates that constitutional guarantee.

In *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 629-633 [22 L.Ed.2d 600, 612-614, 89 S.Ct. 1322], the seminal case in this area, the Supreme Court declared unconstitutional a Connecticut welfare law which deterred indigents from immigrating there by denying Connecticut residents welfare until they have resided in the state for one year. This "waiting-period" was held to constitute invidious discrimination as between classes of Connecticut residents without justification by any legitimate, compelling state objective. (*Id.*, at p. 633 [22 L.Ed.2d at p. 614].)

The *Shapiro* court was careful to point out that "[w]e imply no view of the validity of waiting-period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." (*Id.*, at p. 638, fn. 21 [22 L.Ed.2d at p. 617].)

Similarly, in *Memorial Hospital* v. *Maricopa County* (1974) 415 U.S. 250 [39 L.Ed.2d 306, 94 S.Ct. 1076], it was held that an Arizona statute imposing a one-year waiting period for new residents to become eligible for state medical assistance impermissibly interfered with the constitutional right to freedom of interstate immigration. The *Memorial Hospital* court acknowledged that lower court decisions have applied the *Shapiro* rule in other contexts and distinguished denial of welfare assistance to needy persons from state laws imposing a waiting period for lower tuition at state universities. Welfare is an immediate "necessity of life" while lower tuition is not. *Memorial Hospital* notes a critical aspect of unconstitutional statutes

---

[1]This same assertion of violation of the constitutional guarantee could be leveled against New York law, if it applied, in view of the situation of a California resident adult child deterred from moving to New York by the potential loss of a legal obligation of support due from her California parents. Indeed, this charge would apply in every instance where the laws of one state in one manner or another would be less favorable to a potential immigrant than those of the state of present residence.

to be that they treat new residents differently from longer term residents with regard to vital state benefits without any justifiable compelling state purpose. (*Id.*, at p. 261 [39 L.Ed.2d at pp. 316-317].)

The Supreme Court has declined to strike down state statutes requiring one year of residence as prerequisite to lower tuition at state institutions of higher education. (*Vlandis* v. *Kline* (1973) 412 U.S. 441, 452-453 [37 L.Ed.2d 63, 71-72, 93 S.Ct. 2230].)

The most recent case on this issue, and the closest in point, is *Jones* v. *Helms* (1981) 452 U.S. 412, 420-423 [69 L.Ed.2d 118, 126-127, 101 S.Ct. 2434]. There the Supreme Court upheld a Georgia state statute that elevated the offense of child abandonment from a misdemeanor to a felony if the parent leaves the state after committing the abandonment. This is not an impermissible infringement upon the constitutional right of interstate travel or immigration, because ". . . if departure [from the state which] aggravates the consequences of conduct that is otherwise punishable, the State may treat the entire sequence of events, . . . as more serious than its separate components." (*Id.*, at pp. 422-423 [69 L.Ed.2d at p. 127].) Further, the law did not subject one class of Georgia citizens to penalties not applicable to others and served the legitimate state interest in enforcement of its child support laws. Neither was the increased gravity of punishment viewed as equivalent to deprivation of a fundamental necessity of life. In a concurring opinion, Justice White emphasized the view that whatever restriction resulted upon interstate travel, the state's interest in enforcing its child support laws is sufficient to justify the restriction. (*Id.*, at pp. 426-427 [69 L.Ed.2d at pp. 129-130].)

Given this case law analysis, no further discussion is required to support the conclusion that California's law imposing a primary support obligation upon California resident parents serves legitimate and compelling state interests, does not create any invidious distinction between classes of California residents, and does not penalize interstate migration by withholding any necessity of life from persons desirous of immigrating here.

Accordingly, the alternative writ is discharged and the peremptory writ is denied.

Kingsley, J., and McClosky, J., concurred.