33 Cal.App.4th 658 (1995)
39 Cal. Rptr.2d 835
In re the Marriage of BARBARA and LARRY LURIE.
BARBARA LURIE MARINO, Appellant,
v.
LARRY LURIE, Respondent.
Docket No. B079163.
Court of Appeals of California, Second District, Division Five.
February 28, 1995.
*661 COUNSEL
Trope & Trope and Thomas Paine Dunlap for Appellant.
Avery M. Cooper for Respondent.
OPINION
GODOY PEREZ, J.
Appellant Barbara Lurie Marino sought to enforce and modify a New York child support order in California pursuant to the Uniform Reciprocal Enforcement of Support Act, Family Code section 4800 et seq. Under New York law, parents must support their children until the children turn 21, while in California the obligation ends at age 18. The family law court ruled that California's age of majority applied and declined to increase support for appellant's 20-year-old son. Appellant challenges that order, along with the denial of her request for attorney fees. For the reasons set forth below, we affirm the order as to child support but reverse and remand for a determination as to the issue of attorney fees.

FACTS AND PROCEDURAL HISTORY
Barbara and Larry Lurie were married October 23, 1970, in New York. They had two sons  Eric born in May 1972 and Aaron born in November 1978.[1] On November 28, 1984, a New York state court entered a judgment dissolving the marriage. The judgment arose from and incorporated a wideranging stipulation between Larry and Barbara concerning custody of the children, visitation, disposition of property and other matters. Barbara was granted sole custody of Eric and Aaron.
Relevant here is that part of the stipulation by which Larry agreed to pay $375 per child each month as child support "until each child is 21, emancipated, or sooner dies." Under New York Domestic Relations Law section 32, *662 a parent is obliged to support a child until he or she turns 21 or is emancipated. While the stipulation was incorporated into the divorce judgment, it did not merge with it and would "survive the effect of" the judgment.
Larry was laid off from his job in July 1985 and obtained a New York court-ordered suspension of his child support obligations until he got another job. He moved to California in November 1985 and became employed in Torrance sometime in 1986. Barbara moved to Pennsylvania and remarried.
On September 9, 1992, Barbara registered her New York divorce judgment in the Los Angeles County Superior Court pursuant to the provisions of the Revised Uniform Reciprocal Enforcement of Support Act of 1968, Code of Civil Procedure former section 1650 et seq. (RURESA).[2] As part of her registration statement, Barbara declared that Larry's child support payments were not in arrears.
On December 9, 1992, Barbara filed an order to show cause seeking to modify Larry's child support obligations. She sought: reimbursement of certain medical expenses for Aaron, who had cystic fibrosis and diabetes; asked that Larry keep both children covered under his medical insurance policy; that he pay for all future uninsured medical expenses; pay the college expenses of both children; and pay an increased amount of child support for both children.
In response, Larry agreed to an increase in Aaron's support payments. He also agreed to abide by the divorce judgment and his incorporated stipulation to pay college expenses as he was able. In accordance with California law, however, he rejected any obligation to pay child support beyond the age of 18. (§§ 3900-3901, 6500.) On March 24, 1993, Barbara filed an order to show cause seeking child support arrearages from Larry. The basis of this request was her allegation that Larry was working for six of the eleven months that his child support obligations were suspended based on his 1985 job layoff. As part of this application, Barbara also sought attorney fees and costs.
On June 15, 1993, the court increased Aaron's child support to $949 each month, found that Larry was able to pay certain of Eric's college expenses *663 and ordered him to do so and also ordered Larry to reimburse Barbara for certain medical expenses which were not covered by insurance. The court took under submission the issues of attorney fees and whether the duration of Larry's child support obligations should be determined by New York or California law. On July 30, 1993, the court ruled that under URESA's choice of law principles, it was obligated to apply California law and terminate child support when each child turned 18. As a result, no increase in support was permitted for the 20-year-old Eric. The court also held that even though it would like to award attorney fees to Barbara, such an award was prohibited by URESA.[3]
Barbara contends on appeal that the federal constitutional principle of full faith and credit required adherence to New York law under the New York judgment, supplanting California's earlier age of majority, and thus requiring the family law court to at least exercise its discretion and determine whether Eric was entitled to any increase in his child support. She also argues that while attorney fees were not allowed in connection with her initial registration of the New York judgment, they are allowed by California law in all subsequent proceedings to enforce or modify the judgment.

DISCUSSION

1. URESA's Choice of Law Principles Require Application of California's Age of Majority

The purposes of URESA "are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." (§ 4801.) URESA itself "creates no duties of family support but leaves this to the legislatures of the several states. The Act is concerned solely with the enforcement of the already existing duties when the person to whom a duty is owed is in one state and the person owing the duty is in another state...." (9B West's U. Laws Ann. (1987) RURESA, prefatory note, p. 382.) URESA's scope is therefore limited to determining entitlement to support already established and enforcing such duties of support. (In re Marriage of Angoco & San Nicolas (1994) 27 Cal. App.4th 1527, 1533 [33 Cal. Rptr.2d 305].)[4]
A duty of support can be one imposed or imposable either by law or by order, decree or judgment of a court in another state with a substantially *664 similar reciprocal law. (§ 4802, subds. (a), (b).) This includes duties existing under statutory law even if it has never been litigated in court or reduced to an order or judgment but is instead litigated for the first time under URESA. (Scott v. Superior Court, supra, 156 Cal. App.3d at p. 584.)
URESA may be enforced both criminally (§§ 4810-4811) or civilly. Civil enforcement may be obtained by two methods. The first is enforcement by an action, which is commenced with the filing of a complaint in the state where the person owed support (the obligee) lives. (§ 4824.) That state (the initiating state) then determines whether the obligee is owed a duty of support. If so, the finding is certified to the responding state, where the duty is sought to be enforced. (§ 4827.) The obligor is then served with the complaint and the court of the responding state will determine whether a duty of support is owed and if so, how much. The responding court may order the obligor to furnish or reimburse support and subject his or her property to the order. (§§ 4831-4833, 4836.)
The second method of civil enforcement applies only if the duty of support is based on a foreign support order. In that case, the other state's order may be registered in a California superior court "in the manner, with the effect, and for the purposes provided in this article." (§§ 4848-4849.) The obligor must send certified copies of the foreign support order and other supporting information to the court clerk. When these are received, the clerk is to file them in a registry of foreign support orders. That filing constitutes registration of the foreign support order. (§ 4852.)[5]
Once registered, the foreign support order "shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner." (§ 4853, subd. (a).) The obligor has 20 days after notice of registration has been served to file a noticed motion requesting the court to vacate the registration or for other relief. No joinder or coordination of actions or cross-complaints are allowed and the claims or *665 defenses are strictly limited to the obligor's identity, the validity of the underlying foreign support order, or the accuracy of the obligee's statement of unpaid support. If the obligor does not file such a motion within 20 days, the registered foreign support order is confirmed. (§ 4853, subd. (b).) The purpose of this alternate registration procedure is to provide a more efficient method of enforcing foreign support orders. (In re Marriage of Aron (1990) 224 Cal. App.3d 1086, 1090 [274 Cal. Rptr. 357].)
Larry did not seek to vacate the registration order. Because only the order itself and not the statement of arrears is confirmed, he was free to contest any claimed arrears after the 20-day period elapsed. (In re Marriage of Aron, supra, 224 Cal. App.3d at p. 1091.) (1) Once the order is registered, the obligor and the obligee are both free to seek modification of the support order. As to the obligor, modification is considered one of the "normal defenses" to a support order permitted by section 4853, subdivision (a). (224 Cal. App.3d at pp. 1090, 1091, fn. 4; In re Marriage of Straeck (1984) 156 Cal. App.3d 617, 622 [203 Cal. Rptr. 69].)
URESA has it own choice of law provision, section 4820, which provides: "Duties of support applicable under this chapter are those imposed under the laws of any state where the obligor was present for the period during which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown." The trial court's ruling on the applicable age of majority here was based on this section and the following four decisions interpreting it.
In Scott v. Superior Court, supra, 156 Cal. App.3d 577, the issue was whether a 28-year-old New York resident who was mentally disabled was entitled to support from her father in California. No such obligation existed under New York law, but it did in California pursuant to Civil Code former section 206 (now § 3910). Under Code of Civil Procedure former section 1670, now section 4820, no conflict of law analysis was necessary. Since New York's USDL contained a similar choice of law provision, this reciprocal adoption of the choice of law rule required application of California law. Accordingly, the father in California was required to support his disabled New York daughter. (Scott v. Superior Court, supra, 156 Cal. App.3d at pp. 584-586.)
In Elkind v. Byck (1968) 68 Cal.2d 453 [67 Cal. Rptr. 404, 439 P.2d 316], the husband and wife were divorced in Georgia. The wife moved to New York and the husband to California. The Georgia divorce decree required the husband to make a lump-sum deposit to establish a trust which would make payments in satisfaction of his child support obligations. Under Georgia law, *666 such an award could not be modified. The wife brought a RURESA action in New York, which was transferred to California, seeking additional child support. Under RURESA's choice of law provision, California law applied and the support order was modifiable. (Id. at pp. 455-457.)
In In re Marriage of Hyon & Kirschner (1991) 231 Cal. App.3d 449, 454 [282 Cal. Rptr. 408], the former husband, after divorcing his wife in Florida, moved to California. The court held that California and not Florida law should determine his obligation to reimburse the state of Florida, which brought a RURESA action to collect for welfare payments to the husband's children.
The final decision which the trial court relied on here was In re Marriage of Taylor (1981) 122 Cal. App.3d 209 [175 Cal. Rptr. 716] (hereafter Taylor). Taylor arose from similar facts and Barbara contends that the trial court misinterpreted the decision and that the ruling in Taylor in fact supports her claim.
The wife in Taylor obtained a Missouri divorce in 1972, ordering the husband to pay $112.50 per month for each of their three children. The wife later moved to Virginia and the husband became a California resident. In April 1979, the wife registered the Missouri judgment in California pursuant to sections 4848-4849 (Code Civ. Proc., former §§ 1697-1698). The wife later brought a motion to compute child support arrearages and requested attorney fees. While Missouri law obligated the husband to support his children until they were 21, he contended California's earlier age of majority applied. As a result, he contended that any payments already made by him for any child over 18 should be credited against any remaining child support obligation. The court confirmed the Missouri judgment as a California judgment and ordered the husband to pay an arrearage of $5,625 and to continue to pay support for the children who remained minors. The amount of the arrearage included payment of support for 2 of the children who had reached 18 but were not then 21. On appeal, the husband only contested the issue of the age of majority. (Taylor, supra, 122 Cal. App.3d at pp. 211-212.)
The appellate court held that as a sister state judgment, the Missouri divorce decree was entitled to be given full faith and credit under section 1 of article IV of the United States Constitution. Even the existence of RURESA and its choice of law provision could not override the doctrine of full faith and credit, stating it would be "patently ridiculous" to permit a child support obligor to unilaterally alter his duties under one state's judgment by moving to another state. (Taylor, supra, 122 Cal. App.3d at p. 214.)
Standing alone, this portion of the decision makes it seem as if Taylor mandates application of New York's age of majority here. When viewed in *667 its factual context and alongside other portions of the decision, however, it is clear that Taylor does not apply and in fact supports the family law court's order in dispute here.
At issue in Taylor were the husband's obligations as to past due child support payments which had accrued under the Missouri judgment before that judgment was registered in California under URESA. The husband "claimed that he was not obligated to pay for any child over the age of 18 years and that any such payment made by him should be credited against any remaining obligation of child support...." (122 Cal. App.3d at p. 212.) In short, the husband wanted to invoke California law as to past payments already made under the Missouri decree and apply those payments to offset his future obligations under the converted California judgment.
The family law court calculated the arrearage owed by including support payments for 2 children who had reached age 18 but were not yet 21. No mention is made as to how the husband's future support obligations would be determined, and the appellate court made it clear that this distinction was critical: "Under Missouri law, arrearage accrued under a judgment for the support of minors which has accrued after they are 18 or over but before the age of 21 is unmodifiable by the courts of that state. As to such accrued part of any judgment, it must be granted full faith and credit by the courts of this state. The support of minor children ordered by a court of the State of Missouri, under the law thereof, must be paid until age 21 or emancipation under the common law rule. [Citation.] [¶] The record at bench discloses no emancipation and no modification of the Missouri judgment. Nor is failure to modify in the present action an issue at bench. Husband has expressly disclaimed any issue of modification. He contends only that the law of California describing minors should be applied rather than the law of Missouri. But as we have explained above, under the federal constitutional demand for full faith and credit that must be accorded to the Missouri judgment, his contention is untenable. [¶] It is significant that we are dealing exclusively with the accrued payments and not with future payments under the support order. As indicated, no issue for modification which would affect future payments has been presented to us. Therefore, we are not concerned with any different rule which might possibly apply under the doctrine of comity and which would allow the court of California to enforce the sister state support order with respect to future payment, but also permits the local California court to modify the support order under appropriate factual circumstances presented to the trial court. [Citation.]" (Taylor, supra, 122 Cal. App.3d at pp. 213-214, italics added.) The court later emphasized this distinction when it held that the Missouri judgment was "res judicata and as to the accrued and past due obligation of support must be given full faith and credit. ..." (Id. at p. 214, italics added.)
*668 The situation here is the obverse of Taylor. Barbara's registration statement declared that there were no arrearages. She sought modification three months later, including a request for increased child support. The husband in Taylor sought to apply California law to past support payments already made under the Missouri judgment as an offset to future payments after that judgment was registered in California for treatment as a California judgment.
(2) Barbara's New York divorce has been registered under URESA and is now treated the same as a California judgment. It is also subject to the same defenses as a California judgment by section 4853, subdivision (a), which "invite[s] reference to state law principles concerning enforcement of child support duties...." (In re Marriage of Aron, supra, 224 Cal. App.3d at p. 1090.) Section 3901 terminates a parent's child support obligations at age 18, and this was a proper defense for Larry to raise under section 4853, subdivision (a). Combined with the choice of law principle set forth in section 4820, it seems clear that California law applies.
New York courts which have considered the issue presented here have similarly concluded that the law of the state where the obligor lives determines the duration of his child support obligation. In Ryan v. Ryan (1987) 128 A.D.2d 624 [513 N.Y.S.2d 25], and Danis v. Stillerman (1978) 66 A.D.2d 818 [411 N.Y.S.2d 353], the New York courts ordered fathers residing in that state to pay child support until age 21 under New York law even though the mothers and children lived in states where the support obligation ended at 18.
When the facts are reversed and faced with the situation presented here, New York has conceded that its age of majority rule is superseded by California's. In Huffman v. Huffman (1978) 93 Misc.2d 790 [403 N.Y.S.2d 850], the court discussed how the correlative rights of entitlement to support and duty of support are determined: "However, in a recent informal opinion of the New York Attorney General entitlement and duty were merged as one concept. 1976 Op.Atty.Gen. 236. In a letter to the County Attorney of Orleans County, the Attorney General stated that `in a child support proceeding commenced in New York and forwarded to California pursuant to New York's Uniform Support of Dependent's Law, which is entitled to reciprocity because of its similarity to [URESA] adopted by California, California law applies in determining whether an 18-year old New York resident is entitled to support from her father who resides in California.' [Citation.]" (Id. at p. 853, italics added.) The same interpretation is included as a practice commentary to New York's USDL. (See Sobie, Practice Commentaries, 14 McKinney's Consol. Laws of N.Y. Ann. (1988 ed.) Domestic Relations Law, § 34, pp. 187-189.)
*669 This holding does not violate the doctrine of full faith and credit. Instead, our courts consider adoption of URESA or similar reciprocal legislation to be in effect a waiver of that doctrine. For instance, the husband in Elkind v. Byck, supra, 68 Cal.2d 453, who was ordered by a California court under RURESA to pay more child support then permitted by Georgia law, challenged the support order on full faith and credit grounds.
The court said that while judgments for alimony to a divorced wife, which cannot be modified by the rendering state cannot be modified elsewhere, the same is not true of child support orders. "A divorce decree incorporating child support provisions, however, does not terminate the relationship of parent and child as it terminates the relationship of husband and wife. This case demonstrates why the divorce state should not be permitted to determine the welfare of the child for all time and in all states: More than ten years following the divorce, none of the parties appears to have any connection at all with Georgia; the mother and child reside in New York, and the father resides in California. [¶] Indeed, by the adoption of [URESA] in almost all states [citation], the federal system now espouses the principle that no state may freeze the obligations flowing from the continuing relationship of parent and child. [Citations.] The states now share the power over that relationship to the extent of the obligor's presence in each.... [Citations.] In deference to the clearly articulated national policy of preserving the flexibility of support obligations, Georgia has expressly refrained from demanding that its judgment be conclusive elsewhere. The parties were therefore entitled to rely upon that judgment in Georgia alone." (Elkind v. Byck, supra, 68 Cal.2d at pp. 459-460, fns. omitted.)
In Scott v. Superior Court, supra, 156 Cal. App.3d 577, where California's statutory duty to support disabled children over age 21 was imposed on the California father of a New York woman, the court noted that New York's choice of law provisions under its USDL were substantially the same as California's version of URESA. (Id. at pp. 584-585.)[6] "This reciprocal adoption of the choice of law rule also evidences a willingness on the part of New York to waive whatever governmental interest it might have in application of its law in the underlying California support action." (156 Cal. App.3d at p. 584.)
The Scott court then quoted from a New York appellate decision which endorsed this choice of law rule: "`The presence of the obligor as a test of *670 the choice of law applicable has worked well. It is simple. In the great majority of cases, it is often the application of the law of the responding state where the obligor is found and has his day in court. So in most cases, the court will be applying its own law.'" (Scott v. Superior Court, supra, 156 Cal. App.3d at p. 586, quoting Anonymous v. Anonymous (1963) 38 Misc.2d 961 [239 N.Y.S.2d 315, 317].) "Thus, the mutual adoption by California and New York of the URESA choice of law criterion for interstate child support enforcement is tantamount to a formal agreement between these states (and the 49 other states, the District of Columbia and Guam, Puerto Rico, and the Virgin Islands which have adopted either the original act or the Revised act of 1968) that in all child support matters involving these two states, the controlling choice of law criterion is the place where the alleged obligor is present. [¶] ... Both California and New York expect, by virtue of their mutual adoption of the URESA choice of law criterion, that California law concerning child support obligations will be applied under the present circumstances. [Citation.] This promotes the stated purpose of the URESA to `improve and extend ... the enforcement of duties of support and to make uniform the law with respect thereto.' [Citation.] To ignore this agreed criterion and engage in the standard evaluation of `comparative impairment' [for conflict of laws analysis] would generate unwanted case-by-case rumination in a special area where the states have expressly agreed to a clear, simple, and consistent answer." (Scott v. Superior Court, supra, 156 Cal. App.3d at p. 586.)
The decision in Taylor, therefore, does not mandate, as appellant contends, the application of full faith and credit principles to respondent's future support obligations. While appellant has distinguished the decisions in Scott, Elkind and Hyon & Kirschner on their facts, each clearly affirms the application of California law under URESA's choice of law provision when the child support obligor is a California resident. Since child support payments cannot be ordered for a child over age 18, the family law court below acted properly in refusing to raise the amount of child support payable for Eric.[7]

2. The Stipulation for Child Support to Age 21 Was Not a Stipulation for Support Beyond the Age of Majority

(3) URESA's choice of law principles notwithstanding, Barbara also contends that Larry's stipulation to support the children until age 21, which *671 the New York judgment incorporated, required the family law court to order support until that time. The court's refusal to admit that stipulation into evidence was error which requires reversal, she argues.[8]
Under section 3587, the court has the authority to approve a stipulated agreement by the parents to support a child past the age of majority. While section 3900 limits the duty of child support up to the age of majority, that section does not limit a parent's ability "to agree to provide additional support or the court's power to inquire whether an agreement to provide additional support has been made." (§ 3901, subd. (b).) Respondent counters that: (1) the stipulation was only to provide support until the children attained their majority for support purposes under New York law; and (2) regardless, the stipulation could only be enforced by way of a separate action for breach of contract. Because we agree with the former contention, we need not discuss the latter.
Under New York law, "[t]o hold defendant responsible for child support beyond the age when the law ceases to expect it requires an express agreement in unmistakable terms to accept such responsibility [citation]." (Hoffman v. Hoffman (1986) 122 A.D.2d 583 [505 N.Y.S.2d 273, 274].) The father in Hoffman entered into a stipulation concerning his oldest child, then 21 but about to graduate from college, that she would be treated "`as though she were emancipated.' ..." (Id. at p. 274.) The mother contended that under this stipulation, the father agreed to equate emancipation with college graduation, thus obligating him to support his remaining younger children until they graduated from college. The court rejected this interpretation under the rule quoted above. (Cf. Streuli v. Streuli (1978) 60 A.D.2d 829 [401 N.Y.S.2d 231, 232] [duty to support past age of majority found where father stipulated that support for each child would end respectively as that child either completes college or, if he does not attend college, turns 21]; Natalie M. v. Philip M. (1977) 90 Misc.2d 974 [396 N.Y.S.2d 752, 753] [father obligated to support retarded adult child incapable of self-support based on separation agreement in which it was agreed that support would cease upon the age of majority if the children "are capable of earning their own living ..."].)[9]
California decisions are in accord with the New York rule of Hoffman. In In re Marriage of Lieberman (1981) 114 Cal. App.3d 583 [170 Cal. Rptr. *672 757], the wife sought to hold the husband liable for child support past the age of majority for their mentally disabled child based on an in-court stipulation. The parties stipulated that child support should be paid "until `the children die, become emancipated or reach majority.'" This was not sufficient to require support beyond the age of majority. (Id. at p. 586.)[10] In contrast, the court in In re Marriage of Whitney (1977) 71 Cal. App.3d 179, 182-183 [139 Cal. Rptr. 324], found an agreement to support beyond the age of majority when the husband agreed to support the children until they turned 21, died, married or were emancipated and that agreement was entered after the Legislature reduced the age of majority from 21 to 18.
Here, Larry agreed to support Eric and Aaron "until each child is 21, emancipated, or sooner dies." The age of majority for child support purposes in New York was (and is) 21 and this stipulation includes no obligation beyond that imposed by law. On these facts, we do not see an express or unmistakable agreement to support the children beyond the age of majority. (Hoffman v. Hoffman, supra, 505 N.Y.S.2d at p. 274.) Nor do we see any difference between an agreement to provide child support until age 21 and an agreement to provide support until the age of majority when the two were synonymous when and where the agreement was made. Under In re Marriage of Lieberman, supra, 114 Cal. App.3d at page 586, we find no agreement for support beyond the age of majority.[11]
Barbara does not contend that Larry intended to support the children beyond the applicable age of majority and the record includes no evidence to support such an interpretation. While appellant's brief did not expressly say so, Barbara appears to contend that since Larry agreed to support the children to age 21 in accordance with New York law, then he should be similarly obligated here. By applying this reasoning, any agreement to provide child support up to the age of majority made in a state with a longer age of majority would render URESA's choice of law provision meaningless under these circumstances. We reject this contention in favor of URESA's clear mandate to apply the law of the state where the obligor lives.[12]

*673 3. Recent Federal Child Support Legislation Does Not Compel a Different Result

On October 20, 1994, President Clinton signed into law the Full Faith and Credit for Child Support Orders Act, 28 United States Code section 1738B (the federal Act). The existence and effect of the federal Act were raised for the first time during oral argument and, at the court's request, the parties provided additional letter briefing on this new law.
Predictably, each party contends the federal Act supports its own position, but both also agree that the new law does not operate retroactively and therefore has no effect on this appeal.
Both the statute and its legislative history are silent as to the effective date of the federal Act and whether it was intended to have retroactive or prospective effect. (4) Absent an express legislative declaration, either in the statute or through its legislative history, federal laws take effect upon signature by the President and apply even when a change to existing law occurs during the pendency of an appeal. (DeGurules v. I.N.S. (9th Cir.1987) 833 F.2d 861, 863; United States v. Shaffer (9th Cir.1986) 789 F.2d 682, 686; United States v. Kowal (D.Conn. 1984) 596 F. Supp. 375, 376.)
(5) While the federal Act therefore operates retroactively, we conclude, post, that the federal Act in no way alters the outcome under URESA. As a result, we need not determine the existence of an exception to the rule of retroactive operation: whether such application would result in an injustice. (DeGurules v. I.N.S., supra, 833 F.2d at p. 863.)
The federal Act is prefaced by certain congressional findings, including: the existence of a growing number of child support disputes between parents living in different states; the laws by which the different states determine their authority to establish support orders are not uniform; the inapplicability *674 of full faith and credit principles to such orders encourages noncustodial parents to move to different states, increasing the difficulty in enforcing support orders and leading to decreased support levels based solely on the noncustodial parent's choice of residence as well as a disregard of court orders and support obligations. The policy of the federal Act is to establish national standards by which the states can determine their jurisdiction to issue support orders and the effect to be given another state's support orders. The purposes of the federal Act are to facilitate enforcement of child support orders among the states, discourage continuing interstate controversies over child support in order to promote financial stability and secure family relationships for the child, and to avoid jurisdictional competition and conflict among state courts in the establishment of support orders. (Pub.L. No. 103-383 (Oct. 20, 1994) 108 Stat. 4063-4066, 1994 U.S. Code Cong. & Admin. News, No. 9, to be codified at 28 U.S.C. § 1738B, hereafter referred to as 28 U.S.C. § 1738B.)
Under 28 United States Code section 1738B(a), each state "(1) shall enforce according to its terms a child support order made consistently with this section by a court of another State; and [¶] (2) shall not seek or make a modification of such an order except in accordance with subsection (e)." To modify a support order "means a change in a child support order that affects the amount, scope, or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order." (28 U.S.C. § 1738B(b).)
A child support order is consistent with the federal Act if "(1) a court that makes the order, pursuant to the laws of the State in which the court is located  [¶] (A) has subject matter jurisdiction to hear the matter and enter such an order; and [¶] (B) has personal jurisdiction over the contestants; and [¶] (2) reasonable notice and opportunity to be heard is given to the contestants." (28 U.S.C. § 1738B(c).)
A state court which has made a support order has continuing exclusive jurisdiction over the order if the child or any contestant resides in that state, unless the court of another state, in accordance with subdivision (e), has modified the order. (28 U.S.C. § 1738B(d).) The court of one state may modify the support order of another state if: "(1) the court has jurisdiction to make such a child support order; and [¶] (2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any contestant; or [¶] (B) each contestant has filed written consent to that court's making the modification and assuming continuing exclusive jurisdiction over the order." (28 U.S.C. § 1738B(e).)
*675 The court of a state which no longer has continuing, exclusive jurisdiction may still enforce its order with respect to nonmodifiable and unsatisfied obligations which accrued before another state modifies the order under subdivision (e). (28 U.S.C. § 1738B(f).)[13]
Finally, the federal Act contains a choice of law provision: "(1) ... In a proceeding to establish, modify, or enforce a child support order, the forum State's law shall apply except as provided in paragraphs (2) and (3). [¶] (2) ... In interpreting a child support order, a court shall apply the law of the State of the court that issued the order. [¶] (3) ... In an action to enforce a child support order, a court shall apply the statute of limitation of the forum State or the State of the court that issued the order, whichever statute provides the longer period of limitation." (28 U.S.C. § 1738B(g).)
Since Larry, Barbara and their children no longer live in New York, that state no longer has continuing exclusive jurisdiction, and the California courts were free to modify the New York support order. (28 U.S.C. § 1738B(d), (e).)[14] A modification may affect not only the amount, but also the scope and duration of a support order. (28 U.S.C. § 1738B(b).) Under the federal Act, California law applies in proceedings to enforce or modify a support order and, as discussed at length ante, under both section 3901 and URESA's choice of law principles, child support obligations in this state terminate when the child turns 18 and reaches the age of majority.
Subdivision (g)(2) of the federal Act, which requires that an issuing state's support order be interpreted according to that state's law, does not alter our conclusion. As demonstrated in part 2 of this decision, under New York law the order can only be interpreted as calling for support until the age of majority is achieved. In enforcing that order, however, both URESA and the federal Act require application of California law.
The federal Act's legislative history also shows that it was not intended to affect URESA actions by a custodial parent to enforce another state's support order: "When the non-custodial parent subsequently moves to another state, he or she may petition the courts in the new state to change the amount of child support he or she is required to pay. Because child support orders are not entitled to full faith and credit, the courts of the other state can, and frequently do, reduce the amount of support payable under the original court order. This [leaves] a custodial parent with only two choices. *676 He or she can choose to accept the ruling, and do without the full amount of child support, often at great hardship to the children. Or, he or she can challenge the ruling in the out-of-state court. Assuming the custodial [parent] learns of the modification in time to appeal, this requires paying money for court costs, attorney's fees, and travel to the new state, all without any guarantee of success. Obviously, neither of these solutions is adequate. S. 922 [the federal Act] is designed to remedy that problem. [¶] If a noncustodial parent wishes to file for a reduction in child support payments, then he or she must do so in the state that originally issued the order. This will insure that the custodial parent is given notice of the proposed modification, as well as an opportunity to oppose the modification if he or she wishes." (Sen. Rep. No. 103-361, 2d Sess., pp. 4-5, see for legis. hist., 1994 U.S. Code Cong. & Admin. News, No. 9A at p. 3261, italics added.)
Thus when the custodial parent seeks to enforce or modify one state's support order in another state's courts, and the first state no longer has continuing exclusive jurisdiction, the law of the latter applies. Since Barbara asked our courts to enforce and increase Larry's support obligations, and since neither the parents nor the children live in New York, those obligations are enforced under California law.

4. Attorney Fees Were Permitted Under California Law

(6) The family law court believed that Barbara would ordinarily have been entitled to an award of attorney fees but held that it had no discretion to award those fees under section 4803, subdivision (b) (Code Civ. Proc., former § 1654, subd. (b)), which states in relevant part: "[N]o party to an action under this chapter ... is entitled to attorney's fees from the opposing party for prosecuting or defending the action, except where the court finds that the opposing party has not prosecuted or defended the action in good faith."
Barbara contends that once she registered the judgment, it was to be treated the same as any California support order, including the right to attorney fees upon bringing a motion for modification, as provided by section 3652 (Civ. Code, former § 4700, subd. (a)).
Only one reported decision has remotely touched on this issue, In re Marriage of Hubner (1988) 205 Cal. App.3d 660 [252 Cal. Rptr. 428]. The ex-wife in Hubner registered her Orange County support order in Los Angeles County pursuant to Code of Civil Procedure former section 1697, subdivision (b) (now § 4848, subd. (b)). The ex-husband moved to vacate the registration pursuant to Code of Civil Procedure former section 1699, subdivision (b) (now § 4853, subd. (b)) on the ground that his primary residence *677 was in Michigan. That motion was denied. Several months later, the ex-wife brought a motion to modify the amount of child support and requested attorney fees. Pursuant to section 4803, subdivision (b), the family law court refused to award fees in connection with the registration proceeding itself, but did order the ex-husband to pay nearly $8,000 in fees apparently in connection with the modification hearing.
The ex-wife in Hubner contested the denial of attorney fees in connection with the registration process and argued on appeal that URESA's prohibition against awarding fees applied only to "routine" registration proceedings, not to contested ones. The appellate court rejected this distinction in reliance on the clear language of Code of Civil Procedure former section 1654, subdivision (b) since URESA "specifically envisions contested registration hearings. [Citations.]" (In re Marriage of Hubner, supra, 205 Cal. App.3d at p. 669.)
The court further hinted at another distinction, based on whether the ex-wife was seeking to enforce or modify a support order. The ex-wife sought fees under Civil Code former section 4370, subdivisions (a) and (b) (now §§ 270, 2030-2031), which provided for an award of fees for support modification motions while a divorce action was pending and under Civil Code former section 4370, subdivisions (c) and (d) (now §§ 273, 3557), which provided for an award of fees in any action to enforce an existing support order: "Finally, we note that assuming a case might arise which presented a serious conflict between Civil Code [former] section 4370 and Code of Civil Procedure [former] section 1654, this is not such a case: [The wife] was seeking modification, not enforcement, of a child support order (compare Civ. Code, [former] § 4370, subd. (c)) and was authorized but not required to register the Orange County judgment in Los Angeles County (Code Civ. Proc., [former] § 1697, subd. (b))." (In re Marriage of Hubner, supra, 205 Cal. App.3d at pp. 669-670.)
Larry and Barbara each interpret Hubner as supporting their respective positions. This dichotomy arises more from a lack of clarity by the court than from a misinterpretation of the decision's meaning by either party. The most we can clearly divine from Hubner is that no fees are available in a URESA registration proceeding, whether it was contested or not. The decision suggests less plainly that the wife was not entitled to fees under provisions which applied to enforcement of support orders because she in fact sought to modify an order instead.
In this case, Larry did not contest Barbara's registration of the New York judgment. He only contested her later attempt to modify the support order *678 and obtain increased child support. We therefore must resolve the question left unanswered by the Hubner court: Whether attorney fees may be awarded in connection with child support modification motions brought under California law after a foreign support order has been registered pursuant to URESA. An examination of URESA's statutory scheme convinces us that the answer is yes.
We begin with the familiar rule of statutory construction that various parts of a statutory scheme must be construed with reference to each other and harmonized. (Bowland v. Municipal Court (1976) 18 Cal.3d 479, 489 [134 Cal. Rptr. 630, 556 P.2d 1081].) Section 4803, subdivision (b) states that no attorney fees may be awarded in "an action under this chapter." The term "action" is excluded from the URESA definitions found at section 4802. It does appear throughout URESA in various contexts, however.[15]
It is clear under both Hubner, supra, and our own independent reading of URESA, that no attorney fees may be awarded in connection with the registration of a foreign support order, whether contested or not. Section 4853, subdivision (b) contemplates that a motion to vacate a registered order is within the ambit of an action to register a foreign support order. Such actions are limited, however, to matters which might normally arise in actions to enforce support orders. (§ 4853, subds. (b) & (c).) After that time, the order is treated the same as a California support order, subject to the same procedures, defenses and proceedings for reopening, vacating or staying support orders. (§ 4853, subd. (a).)
Under California law, attorney fees and costs may be awarded as part of an order modifying or terminating child support. (§ 3652; Civ. Code, former § 4700(a).) We decline to hold that a postregistration motion to modify child support falls within the ambit of a URESA registration action for purposes of *679 denying attorney fees. Such a holding would be contrary to the provisions of section 4853, subdivisions (b) and (c), which define the scope of registration actions. It would also defy the express mandate of section 4853, subdivision (a), which commands us to treat a registered foreign support order exactly the same as a California order.
To hold otherwise would deny child support obligees their right to attorney fees and costs under section 3652 by holding that the initial step of obtaining URESA enforcement through registration converts all future proceedings under California law into URESA actions. Accordingly we reverse that portion of the family law court's order denying Barbara's request for attorney fees and costs and remand the matter for a hearing to determine the proper amount of fees to which she is entitled under section 3652.

DISPOSITION
For the reasons set forth above, the family law court's order refusing to modify child support for Eric under California's age of majority is affirmed. The order denying Barbara's request for attorney fees and costs is reversed and the matter remanded for the purpose of determining the amount of fees to which she is entitled under section 3652. Each party to bear its own costs on appeal.
Grignon, Acting P.J., and Armstrong, J., concurred.
NOTES
[1] Barbara Lurie has since remarried and is now known as Barbara Marino. For ease of reference, she will be referred to as either "Barbara" or "appellant." Her former husband will be referred to as either "Larry" or "respondent" and both children will also be referred to by their first names.
[2] Effective January 1, 1994, RURESA was repealed and reenacted without substantive change as the Uniform Reciprocal Enforcement of Support Act, Family Code section 4800 et seq. (URESA). (See Cal. Law Revision Com. com., Enactment (rev. com.), 29D West's Ann. Fam. Code (1994 ed.) § 4800, p. 754.) Because the changes made in the reenactment process were not substantive and do not bear on the issues before us, we will refer to the new URESA provisions. Unless otherwise indicated, all future statutory references are to the Family Code.
[3] While the record is not entirely clear, it appears that Larry paid child support for Eric up to his 21st birthday in the amount set by the New York judgment. At issue here is whether Barbara was entitled to modify that amount upward under URESA and receive the difference for the six-month period before Eric turned twenty-one.
[4] URESA was adopted in California in 1953 and revised in 1968 as RURESA. As noted in footnote 2, ante, before January 1, 1994, RURESA was codified at Code of Civil Procedure former section 1650 et seq. and is now found as URESA at Family Code section 4800 et seq. Nearly every state, the District of Columbia, Guam, and the Virgin Islands have adopted URESA or RURESA. (Scott v. Superior Court (1984) 156 Cal. App.3d 577, 586 [202 Cal. Rptr. 920].) New York has not, but has instead adopted its Uniform Support of Dependents Law (USDL), New York Domestic Relations Law section 30 et seq. While the New York law differs in some respects from URESA, it is similar enough to permit reciprocity with California. (Landes v. Landes (1955) 207 Misc. 460 [138 N.Y.S.2d 442, 445].) New York's obligation of child support until age 21 is expressly incorporated into its USDL as Domestic Relations Law section 32.
[5] A California support order may also be registered under this procedure in any other California county where the obligor resides or owns property. (§ 4848, subd. (b).)
[6] The Scott court incorrectly stated that New York had adopted URESA, but correctly noted that New York's choice of law provisions under its own USDL were much the same. (Scott v. Superior Court, supra, 156 Cal. App.3d at pp. 585-586; see New York Domestic Relations Law, §§ 37, subd. (2), and 37-a, subd. (6)(a).)
[7] As mentioned in footnote 3, ante, Larry is not in arrears under the New York judgment since he paid child support for Eric in the amount originally ordered until Eric turned 21. We also wish to make clear that even though our holding may someday apply to Aaron, it does not yet for the simple reason that Aaron will not turn 18 until November 1996. Any order in regard to Larry's obligation to support Aaron beyond then is premature since we do not know for certain whether Larry will still be a California resident at that time.
[8] The court refused to admit the stipulation into evidence on the ground that it was not relevant.
[9] We also note that, to the extent he is financially able, Larry is obligated under the stipulation to pay for each child's college education, presumably requiring his support in some measure beyond California's age of majority. The family law court here determined that Larry was able to provide for Eric's college education and ordered him to do so. Should Aaron choose to attend college, the same obligation will exist.
[10] The family law court in Lieberman imposed the duty to support the mentally disabled child by holding that the child's disability would forever prevent its emancipation and noted that the parties did not stipulate to that term. (In re Marriage of Lieberman, supra, 114 Cal. App.3d at pp. 586-587.)
[11] If, for example, Larry had stipulated to support the children to age 25, Barbara would have some basis for arguing that he intended to provide support beyond the age of majority. As noted above, Larry's only obligation to do so depends on whether Eric and Aaron go to college and whether Larry is financially able to pay their college expenses.
[12] For much the same reason we reject Barbara's related argument based on decisions concerning the effect of child support agreements or orders made before March 4, 1972, when the age of majority in California was reduced from age 21 to age 18. The seminal decision on this issue was Ganschow v. Ganschow (1975) 14 Cal.3d 150 [120 Cal. Rptr. 865, 534 P.2d 705], which held that all orders entered before March 4, 1972, which ordered child support either to age 21 or to the age of majority were not affected by the new age of majority legislation per se but, where subject to amendment, could refer in any modification order to the new age of majority. This holding interpreted the provisions of Civil Code former section 25.1 (now § 6502) and expressed the Legislature's policy of protecting the reasonable expectations of the parties and the court when support obligations were originally fashioned. (14 Cal.3d at pp. 153-159.)

The issues in Ganschow are not analogous here. In Ganschow, the court was interpreting and applying an express legislative mandate concerning the treatment of a certain class of California child support orders. To apply that reasoning here would gut URESA's choice of law provision, where New York (along with the 49 other states) has agreed that the law of the state where the support obligor lives is controlling.
[13] This provision of the federal Act is consistent with the facts and holding of Taylor, supra, where full faith and credit principles require enforcement of another state's support order as to past due and therefore nonmodifiable support obligations.
[14] It is not disputed that the trial court here had both subject matter and personal jurisdiction in this matter. (28 U.S.C. § 1738B(c), (e).)
[15] Section 4822 states that all duties of support may be enforced "by an action under this chapter...." Section 4831, subdivision (a), which applies to URESA's civil complaint procedure, requires the clerk of the responding court, after receipt of a complaint from the initiating court, to notify the prosecuting attorney "of that action." Under section 4845, subdivision (a), a hearing under URESA's complaint procedure is governed by the ordinary rules of evidence in civil cases and, if the "action" is based on another court's support order, that order is admissible.

Under URESA's registration procedure, once a support order from another state, or another county within California, is registered, the obligor has 20 days to file a motion to vacate the registration. "In an action under this section, there shall be no joinder of actions, coordination of actions, or cross-complaints, and the claims or defenses shall be limited strictly to the identity of the obligor, the validity of the underlying foreign support order, or the accuracy of the obligee's statement of the amount of support remaining unpaid...." (§ 4853, subd. (b).) At the hearing on the motion to vacate, the obligor may only present matters which would be available as defenses "in an action to enforce a support judgment." (§ 4853, subd. (c).)