37 Cal.App.4th 1624 (1995)
44 Cal. Rptr. 717
In re the Marriage of JUDY YVONNE and JAMES ALLAN CHESTER.
JUDY YVONNE CHESTER GARNIER, Appellant,
v.
JAMES ALLAN CHESTER, Respondent.
Docket No. E013239.
Court of Appeals of California, Fourth District, Division Two.
August 30, 1995.
*1626 COUNSEL
Judy Yvonne Chester Garnier, in pro. per., for Appellant.
James Allan Chester, in pro. per., for Respondent.
OPINION
RAMIREZ, P.J.
Former wife appeals from a trial court order which states that former husband's obligation to provide support for the minor daughter of the parties is to terminate no later than the daughter's 19th birthday. Under the original Oregon judgment of dissolution, support was to continue until the daughter reached the age of 21 provided she attended school up to that time. Appellant argues that the California court abused its discretion by modifying the Oregon support order in the absence of a request for modification. We agree with appellant.

Facts
Appellant Judy Yvonne Chester Garnier (Garnier) and respondent James Allan Chester (Chester) were married in 1970 in Riverside County. There were two children of the marriage, a son, Michael, born in 1973 and a daughter, Staci, born in 1978.
In an order dated June 14, 1989, the marriage of the parties was dissolved effective July 6, 1989. Chester, who was and remains on active duty in the United States Navy, was stationed in Medford, Oregon, at the time of the dissolution and the dissolution was obtained in that state. Custody of the minor children was awarded to Garnier, who at that time was living in California, with visitation to Chester.
The Oregon dissolution judgment ordered Chester to pay child support to Garnier for the minor children in the amount of $350 per month per child, or a total of $700 per month. Chester was ordered to pay spousal support to *1627 Garnier in specified amounts for a period of five years beginning April 1, 1989. As it relates to the present appeal, the child support provision in the judgment stated the following: "Said support shall be made on the first day of each month beginning April 1, 1989, and continuing each and every month thereafter on the same day of each month, until each child reaches the age of 18 years, and thereafter so long as the child shall qualify as a `child attending school' as defined in ORS [Oregon Revised Statutes] 107.108(4)."[1] (Italics added.)
On January 14, 1992, the child support enforcement division of the Riverside County District Attorney's office filed a statement on behalf of Garnier to register in California the support order which had been entered in Oregon. That statement listed Chester's address as Corona, California. The statement referred to the dissolution judgment which had been signed June 15, 1989, and a modification order entered in Oregon on September 18, 1991, and indicated that Chester owed Garnier $3,930 in unpaid spousal support and $1,445.35 in unpaid child support.
Attached to the statement for registration of the support order was a copy of the Oregon "Show Cause Result Order" dated September 18, 1991, under which the amount of child support payable by Chester had been increased to $1,016 per month beginning on September 1, 1991. The ending date for payment of child support was stated to be "child attending school per ORS 107.108(4)." Under the modification order spousal support was terminated as of May 1, 1991. Judgment was entered by the Oregon court for spousal support arrearages owed to Garnier through April 30, 1991, in the amount of $3,930, and child support arrearages in the amount of $858.91 which were owed through August 31, 1991.
On February 3, 1992, Chester filed a petition to vacate registration of the foreign support order on the ground that "said order fails to reflect and to account for [Garnier's] recent marriage and the emancipation of one child." Attached to the petition was a copy of a marriage certificate showing that Garnier had remarried October 14, 1990.
The proceedings were at some point again pursued in the Oregon court because on November 3, 1992, that court issued an order stating again that, *1628 under Oregon Revised Statutes section 107.108, Michael, who was then 19 years old, was entitled to support from Chester in the amount of $508 per month until he reached the age of 21 so long as he remained enrolled in college. The order stated that support for Staci was to continue in the amount of $508 per month. The order further stated that the spousal support originally ordered by the court was satisfied in full and that Garnier was to make no further claim against Chester for spousal support. The order concluded by stating that "The parties are strongly encouraged to resolve all differences concerning visitation of the minor child between themselves. Any further differences concerning visitation shall be subject to California jurisdiction or the state in which the minor child resides."
The custody and visitation issues were apparently then referred to the mediation department of the Riverside Superior Court and on January 14, 1993, an agreement was reached and signed by the court addressing custody and visitation involving Staci, who was at that time 14 years old.
On April 20, 1993, Garnier, acting in propria persona, filed a motion for modification of child support and for attorney fees and costs. In the motion Garnier claimed that Chester was obligated to pay support for both Staci and Michael, and she sought an increase of support under the support guidelines. Garnier stated in her motion that Chester was $1,016 behind in his support payments. Garnier then filed a statement to register in Riverside County the modification order issued in Oregon on November 3, 1992. Both parties filed points and authorities on the issues raised in Garnier's motion and the matter was ultimately heard and submitted to the court.
On July 15, 1993, the Riverside Superior Court issued an order in which it reviewed the history of the case and noted that a "Stipulated Order" had been signed in California by the parties on January 14, 1993, at the time the custody and visitation issues were resolved. In that stipulation the parties had agreed that the original Oregon judgment of July 6, 1989, as amended September 18, 1991, would be deemed filed, and the parties had further agreed to modify those rulings to include a provision specifying Chester's obligation to continue support to Michael at a certain rate "so long as son is a full time college student or until age of 21 years old" subject to certain conditions which are not relevant here. At the time the stipulation was signed on January 14, 1993, Michael was over the age of 18 and had graduated from high school. The stipulated order was silent regarding Chester's obligations of support toward Staci.
In its order of July 15, 1993, the California court (1) denied Garnier's motion to modify support for Michael; (2) entered the stipulated order *1629 signed January 14, 1993, nunc pro tunc as of that date; (3) increased Chester's support obligation to Staci to $925 per month, pursuant to court guidelines, to continue "until further order of court, or until the child marries, dies, is emancipated, reaches age 19, or reaches age 18 and is not a full-time high school student residing with a parent, whichever occurs first"; (4) ordered Chester to maintain the minor children on medical insurance plans; and (5) ordered the parties to pay their own attorney fees and costs. (Italics added.)
It is paragraph (3), regarding the duration of Chester's support obligation to Staci,[2] that Garnier has challenged in this appeal.

Discussion
(1a) On appeal Garnier argues that the trial court erred when it ordered that child support to the minor child of the parties, Staci, was to terminate when Staci reached age 19 or reached age 18 and was not a full-time high school student. Garnier contends that, under the Oregon judgment, child support was to continue until Staci reached the age of 21 provided she was attending school, and that the court erred in removing that provision for extended child support without a modification motion having been brought by Chester.
The Revised Uniform Reciprocal Enforcement of Support Act of 1968 (RURESA) was enacted as former Code of Civil Procedure section 1650 et seq., with the purpose "to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." (Code Civ. Proc., § 1652, added by Stats. 1953, ch. 1290, § 2, p. 2844 and repealed by Stats. 1992, ch. 162, § 6, eff. Jan. 2, 1994; see, now, Fam. Code, § 4801.)[3] The RURESA provides, among other things, for the registration in a California court of a support order issued by the court of another jurisdiction. (Code Civ. Proc., § 1698 [Fam. Code, § 4849].) "Upon registration, the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same *1630 effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner." (Code Civ. Proc., § 1699, subd. (a) [now Fam. Code, § 4853].) (2) "URESA[[4]] itself `creates no duties of family support but leaves this to the legislatures of the several states. The Act is concerned solely with the enforcement of the already existing duties when the person to whom a duty is owed is in one state and the person owing the duty is in another state....' (9B West's U. Laws Ann. (1987) RURESA, prefatory note, p. 382.) Thus, the scope of the act is expressly limited to determining entitlement to support already established and enforcing such duties of support. [Citation.]" (In re Marriage of Angoco & San Nicolas (1994) 27 Cal. App.4th 1527, 1533 [33 Cal. Rptr.2d 305].)
(1b) In 1941, prior to the 1953 enactment of URESA, the California Supreme Court addressed the question of the extent to which the courts of California were obligated to enforce another state's support order which was not in accordance with California law. (Biewend v. Biewend (1941) 17 Cal.2d 108 [109 P.2d 701, 132 A.L.R. 1264].) Upon dissolution of the marriage in Missouri in 1918 plaintiff wife had been awarded $25 per week for the support of herself and the four minor children of the parties. All parties then moved to California. Over time the four children reached their majority; plaintiff married and divorced a second time, then lived again with defendant husband for four years. In 1938 plaintiff brought suit in California to recover past and future payments due under the support order. She obtained a judgment ordering payment of installments due for the five years preceding the judgment, and also payment to her of $25 per week from the date of the judgment. (Id., at p. 110.)
On appeal the California Supreme Court affirmed. The court concluded that under Missouri law "Neither the subsequent marriage of the divorced wife to another nor her subsequent resumption of marital relations with the defendant nor the coming of age of the children automatically releases the defendant from his obligations to pay alimony. They merely afford grounds for the court in its discretion to modify or vacate the order as to future installments upon proper application. [Citation.]" (Biewend v. Biewend, supra, 17 Cal.2d at p. 111.) The court went on to state that "It is well settled that once a valid judgment has been rendered it must be accorded full faith and credit by every other court within the United States even though the cause of action upon which the judgment was based is against the law and public policy of the state in which enforcement is sought," and concluded that California was obligated to enforce the Missouri judgment as to accrued *1631 installments of support notwithstanding the rule in California that plaintiff's support would have terminated when she remarried and the minor children came of age. (Id., at pp. 111-112.)
As to future payments, however, the court was bound not by the obligation of full faith and credit but by the rule of comity under which a foreign decree for support will be established as the decree of the California court "with the same force and effect as if it had been entered in this state," subject to the principle that such an order would not be given effect "when contrary to the settled public policy of the forum." (Biewend v. Biewend, supra, 17 Cal.2d at p. 113.) The court concluded that the order in the case before it was not against public policy in this state and that "it is not incumbent upon the California court to refuse to give prospective effect to the decree upon these grounds," and that the Missouri order was "valid and enforceable until such time as the Missouri court modifies its decree." (Id., at p. 114.)
That portion of the Biewend decision which held that it was for the issuing court, rather than the courts of California, to modify the decree was reconsidered in Worthley v. Worthley (1955) 44 Cal.2d 465 [283 P.2d 19]. The court there held that the subsequent enactment of URESA, as well as a United States Supreme Court decision requiring that a defendant be given an opportunity to litigate the issue of modification, compelled the conclusion that "In an action to enforce a modifiable support obligation, either party may tender and litigate any plea for modification that could be presented to the courts of the state where the alimony or support decree was originally rendered." (Id., at pp. 472-474.)
The rule stated in Worthley v. Worthley, supra, 44 Cal.2d 465, was applied in a recent decision in which the wife, who remained in Texas with the minor child, opposed the motion of the supporting husband, a California resident, to modify the Texas child-support order which had been registered in California under RURESA. (In re Marriage of Aron (1990) 224 Cal. App.3d 1086 [274 Cal. Rptr. 357].) The trial court modified the husband's support obligation and the wife appealed, arguing that under the streamlined registration procedures of RURESA the court had the power to enforce, but not modify, the foreign order. (224 Cal. App.3d at p. 1090.) The appellate court affirmed, citing Code of Civil Procedure "section 1699, subdivision (a), which equates the registered foreign order with a California support order, modifiable prospectively at any time in light of changed circumstances." (224 Cal. App.3d at p. 1092.)
The question of which state's age of majority to apply has also been litigated. In re Marriage of Taylor (1981) 122 Cal. App.3d 209 [175 Cal. Rptr. *1632 716] raised the issue of whether, under a Missouri judgment which had been confirmed as a California judgment, support of the "minor children" should continue until 21, the age of majority under Missouri law, or until 18, the age of majority under California law. The husband who was being asked to pay support was a resident of California; the wife was a resident of Virginia. (Id., at p. 212.)
Noting that it dealt only with accrued and not with future payments under the support order  and that it was therefore not concerned with questions of comity  the court affirmed the trial court award of support for children who were over the age of 18. (In re Marriage of Taylor, supra, 122 Cal. App.3d at p. 214.) The court rejected husband's claim that the rule of Biewend v. Biewend, supra, 17 Cal.2d 108, had been modified by RURESA, specifically by Code of Civil Procedure section 1670,[5] and that California law of majority should be applied. In rejecting husband's contention the court observed that "To accept [husband's] argument would be to accept the proposition that the Missouri judgment, which is res judicata and as to the accrued and past due obligation of support must be given full faith and credit [citations], can be changed and modified by the obligor's unilateral action of removing himself to a state of his choice where the definition of terms used in the judgment may differ from the laws of the state rendering the judgment." (In re Marriage of Taylor, supra, 122 Cal. App.3d at p. 214.)
In affirming that RURESA "is intended to assist and enlarge the ability of the needy family to obtain support from the wandering obligor," the court emphasized that RURESA "most certainly cannot circumscribe, override or in any other way limit the full operation of the constitutional provision" which obligates courts to grant full faith and credit to judgments of other states. (In re Marriage of Taylor, supra, 122 Cal. App.3d at p. 215.) As evidence that such a limitation was never the intent of the legislation the court quoted from the provision in RURESA which states that "The remedies provided in this title are in addition to and not in substitution for any other remedies." (Code Civ. Proc., § 1654 [now Fam. Code, § 4803].)
We have concluded that in the present case, as in Biewend v. Biewend, supra, 17 Cal.2d 108, considerations of comity require that we give future effect to the judgment of the Oregon court which directed that Chester pay child support for the benefit of Staci until she reaches the age of 21, provided she is attending school.
We recognize that the result we reach here differs from the recent decision in In re Marriage of Lurie (1995) 33 Cal. App.4th 658 [39 Cal. Rptr.2d 835]. *1633 For the reasons we will outline, we disagree with the analysis in that opinion and we decline to follow it; the four cases primarily relied on by the court in Lurie do not, in our view, lead to the conclusion reached by that court.
In In re Marriage of Lurie, supra, 33 Cal. App.4th 658, the parties were married and divorced in New York. Under the 1984 judgment of dissolution, which incorporated a stipulation of the parties, custody of the two minor children was awarded to mother, and father agreed to pay $375 per child each month as child support "`until each child is 21, emancipated or sooner dies.'" (Id., at p. 661.) Under New York law, a parent is obligated to support a child until he or she is 21.
In 1992, mother registered the New York judgment in Los Angeles County, where father was living. Mother was then living in Pennsylvania. Mother filed an order to show cause for modification, asking the California court to increase father's child support obligations to both children. (In re Marriage of Lurie, supra, 33 Cal. App.4th at p. 662.) By that time one of the sons was 20 years old and the other was 16. (Ibid.) Father agreed to increase support for the younger child but, relying on California law, "rejected any obligation to pay child support beyond the age of 18." (Ibid.) The trial court ruled that it was obligated, under URESA's choice of law principles, to apply California law and to terminate child support when each child turned 18, and therefore no increase in support was permitted for the son who was 20 years old. (33 Cal. App.4th at p. 663.) Mother appealed.
On appeal the court noted first, as we have here, that URESA itself does not create support duties but is concerned only with enforcement of existing duties. (In re Marriage of Lurie, supra, 33 Cal. App.4th at p. 663.) The court quoted the choice of law provision of URESA which states, in part, that "Duties of support applicable under this title are those imposed under the laws of any state where the obligor was present for the period during which support is sought." (Code Civ. Proc., § 1670 [now Fam. Code, § 4820].) The court then affirmed the trial court ruling which was based on that section and on four decisions interpreting it. (In re Marriage of Lurie, supra, 33 Cal. App.4th at p. 665.)
The first of these cases was Scott v. Superior Court (1984) 156 Cal. App.3d 577, 586 [202 Cal. Rptr. 920]. That case, unlike Lurie or the case now before us, did not involve enforcement of an existing order from another jurisdiction.[6] Instead, the court, when faced with the question of whether an adult disabled daughter was entitled to support, applied the law of the state in *1634 which the parent lived (California), rather than the state in which the daughter lived (New York), and held there existed an obligation of support.
The second case, Elkind v. Byck (1968) 68 Cal.2d 453 [67 Cal. Rptr. 404, 439 P.2d 316], involved a Georgia decree requiring the husband to make a lump-sum deposit to establish a trust which would make payments in satisfaction of his child support obligations. Under Georgia law such an award could not be modified. The wife brought a RURESA action in New York, where she was living, seeking additional child support. The action was transferred to California, where husband lived. The issue before the court was whether the Georgia order, which was not modifiable in Georgia, could be modified under California law. The California Supreme Court held that under RURESA's choice of law provisions, California law permitting modification of the order should apply; "Plaintiff should be allowed to prove that defendant has failed to provide fair and reasonable support for his child." (Elkind v. Byck, supra, 68 Cal.2d at p. 460, fn. omitted.)
The third case was In re Marriage of Hyon & Kirschner (1991) 231 Cal. App.3d 449 [282 Cal. Rptr. 408], which, like Scott v. Superior Court, supra, 156 Cal. App.3d 577, did not involve enforcement or modification of an existing support order, but instead dealt with deciding which law to apply in determining whether there existed a duty of support. As in Scott, the court in Hyon & Kirschner applied the law of the state in which the obligor resided, California.
The fourth decision relied upon by the Lurie court was In re Marriage of Taylor, supra, 122 Cal. App.3d 209, which we have discussed above, in which a California court enforced payments due under a Missouri order which included support for a child over the age of 18. The Lurie court recognized that the decision in Taylor appeared to support enforcement of the New York order requiring support until the children reached the age of 21, but the Lurie court concluded that Taylor dealt only with accrued payments, and not with future payments, and held that California law should be applied as to payments which had not yet accrued. (In re Marriage of Lurie, supra, 33 Cal. App.4th at p. 668.) The Lurie court then affirmed the trial court order which applied California's age of majority and refused to modify child support for the 20-year-old son. (Id., at p. 679.)
We do not find that the cited decisions support the result reached by the court in Lurie. Scott and Hyon & Kirschner do not deal with enforcement of *1635 existing orders and thus are not direct authority either for or against the outcome in Lurie. Elkind v. Byck established that foreign child support orders, once registered in California, are subject to California modification rules; the case does not, however, serve as authority for the principle that California courts are not bound by those foreign orders until such time as they have been modified. Thus, we would hold that the trial court in Lurie was obligated to consider the mother's motion to increase child support for the 20-year-old son, and that the court was required to enforce the existing support order, which directed that support was to continue until the children reached the age of 21, until that order had been modified in accordance with California law.
In reaching our decision in the case now before us we are also guided by the treatment accorded to existing child support orders at the time the California age of majority was reduced from 21 to 18. In Ganschow v. Ganschow (1975) 14 Cal.3d 150 [120 Cal. Rptr. 865, 534 P.2d 705], the California Supreme Court affirmed the constitutionality of and upheld the provision in the law which stated that, as to child support orders which had been entered before the age of majority was lowered, a reference to "`"age of majority"'" or "`words of similar intent'" referred to the age of 21, and not 18, years, although such references were subject to amendment in accordance with other provisions of law. (Id., at p. 156, fn. 6.)
That rule was applied to slightly different facts in In re Marriage of Rasmussen (1984) 155 Cal. App.3d 805 [202 Cal. Rptr. 343]. There, custody of the parties' minor child had been awarded to the wife in 1970, when the age of majority was 21, and the husband was ordered to pay child support. In 1978, after the age of majority had been lowered to 18, custody was changed to husband and wife was ordered to pay support. (Id., at p. 807.) When the son turned 18, wife sought to terminate support. The trial court denied her motion and she appealed. (Id., at p. 808.) The appellate court affirmed, quoting a statute which provided that any pre-1972 support order could be amended or modified "`without terminating such award at the age of majority based on 18 years of age.'" The statute went on to state that "`This section does not constitute a change in, but is declaratory of, the existing law.'" (Id., at p. 809, citing Civ. Code, § 4704.)
Although these decisions do not resolve the case before us they do indicate that neither the courts nor the Legislature found it to be against public policy to recognize orders which continued support to the age of 21. These decisions also indicate that the Legislature did not intend for the statutory age of majority to prevail over existing support orders by operation of law. Both of these considerations influence our decision in the present case.
*1636 We conclude that once the Oregon orders had been registered in California, the California court was bound by the provisions in those orders regarding the age at which support for Staci would terminate; that those provisions were subject to modification by the California courts; and, as with any California support order, modification by the California court would be appropriate only upon motion and a showing of changed circumstances. (Philbin v. Philbin (1971) 19 Cal. App.3d 115, 119 [96 Cal. Rptr. 408].)

Disposition
The order of the trial court directing that support to the minor child Staci is to terminate no later than the time she reaches the age of 19 is reversed, and the trial court is directed to enter an order on that issue which conforms to the Oregon court orders which have been registered in California. Costs on appeal to be borne by respondent.
Hollenhorst, J., and McKinster, J., concurred.
NOTES
[1] Section 107.108, subdivision (4), of the Oregon Revised Statutes provides: "As used in this section, `child attending school' means a child of the parties who is unmarried, is 18 years of age or older and under 21 years of age and is a student regularly attending school, community college, college or university, or regularly attending a course of vocational or technical training designed to fit the child for gainful employment. A child enrolled in an educational course load of less than one-half that determined by the educational facility to constitute `full-time' enrollment is not a `child attending school.'"
[2] The relevant portion of the order stated: "JAMES ALLAN CHESTER, obligor, shall pay to JUDY YVONNE GARNIER, obligee, as and for support of the minor child STACI MICHELLE CHESTER, the sum of $925.00 per month, payable one-half on the first, and one-half on the fifteenth days of each month, commencing 8/1/93, and continuing until further order of court, or until the child marries, dies, is emancipated, reaches age 19, or reaches age 18 and is not a full-time high school student residing with a parent, whichever occurs first."
[3] Effective January 1, 1994, the provisions of the Code of Civil Procedure comprising RURESA were repealed and reenacted without substantive change as section 4800 et seq. of the Family Code. Hereafter, in this opinion we will refer to the code sections which existed at the time of the trial court's order, with bracketed reference to the superseding Family Code section.
[4] URESA, the Uniform Reciprocal Enforcement of Support Act, was the precursor to RURESA, the Revised Uniform Reciprocal Enforcement of Support Act.
[5] Former Code of Civil Procedure section 1670, now Family Code section 4820, states that "Duties of support applicable under this title are those imposed under the laws of any state where the obligor was present for the period during which support is sought...."
[6] RURESA also provides a means of obtaining an order for support in those cases in which an obligation of support is found to exist but no order has been issued directing the payment of support. In such a case, a complaint is filed by the party seeking support; if the complaint "sets forth facts from which it may be determined that the obligor owes a duty of support" the complaint may then be transferred to the state in which the supporting party resides, and the action proceeds in the latter state. (Code Civ. Proc., § 1676 [now Fam. Code, § 4827].)